(December 9, 1910.)

BERT WINTER, Appellant, v. JOHN NOBS et al., Respondents.

[112 Pac. 525.]

NEGOTIABLE INSTRUMENTS—NOTE EXECUTED THROUGH FRAUD—RIGHT OF INDORSEE TO RECOVER—NOTICE TO INDORSEE—BURDEN OF PROOF —GOOD FAITH OF INDORSEE—BONA FIDE PURCHASER QUESTION OF FACT FOR JURY.

(Syllabus by the court.)

1. Where the indorsee of a promissory note sues the makers, and on the trial they establish the fact that the note was given in payment of the purchase price of an animal sold under fraudulent misrepresentation as to the character and condition of the property sold and under a false and fraudulent guaranty, by sec. 3516, Rev. Codes, the burden of proof shifts from the defendants to the plaintiff to show that he acquired the note before maturity and in good faith for value.

2. Whether plaintiff in such a case has satisfactorily met the burden of proof to make good his claim to be an innocent purchaser,

is a question of fact for the jury, and is subject to the same rule as to its weight and sufficiency as any other fact in the case.

3. Under the provisions of sec. 3513 of the Rev. Codes, mere suspicious circumstances are not sufficient to charge the purchaser of a promissory note with bad faith and notice of equities and defenses, but in order to charge the paper in his hands with prior equities and defenses his notice must be actual, either of the facts constituting the equities and defenses or of such circumstances that his action in taking the paper in the face of such knowledge amounts to bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by speculative issues as to diligence or negligence.

4. The mere failure to pay a periodical instalment of interest does not amount to a dishonor of a negotiable instrument, and that fact alone will not charge the purchaser with notice of any fraud or misrepresentation in the contract out of which the note arose or in the issuance and circulation of the note.

APPEAL from the District Court of the Eighth Judicial District, in and for Kootenai County. Hon. Robert N. Dunn, Judge.

Action by plaintiff on a promissory note. Judgment for defendants and plaintiff appeals. *Affirmed.*

Reed & Boughton and Robt. H. Elder, for Appellant.

"The holder of commercial paper is presumed to have taken it underdue for a valuable consideration and without notice of any objections to which it was liable; and this presumption stands until overcome by sufficient proof." (*Carpenter v. Logan,* 83 U. S. 271, 21 L. ed. 313; *Chambers Co. v. Clews,* 88 U. S. 317, 22 L. ed. 517; *New Orleans Canal & B. G. Co. v. Montgomery,* 95 U. S. 16, 24 L. ed. 346; Daniel on Negotiable Instruments, 4th ed., sec. 819; *Meyer v. Lovdal,* 6 Cal. App. 369, 92 Pac. 325.)

"Suspicious circumstances sufficient to put a prudent man upon inquiry are not in themselves sufficient to overcome the presumption of *bona fides* in the purchase of commercial paper." (*Christianson v. Farmers' Warehouse Assn.,* 5 N. D. 438, 67 N. W. 300, 32 L. R. A. 730; *McNamara v. Jose,*

28 Wash. 461, 68 Pac. 903; *Gray v. Boyle,* 55 Wash. 578, 133 Am. St. 1042, 104 Pac. 828; *Tourtelotte v. Brown,* 1 Colo. App. 408, 29 Pac. 130; *Wedge Mine v. Bank,* 19 Colo. App. 182, 73 Pac. 873.)

Past due instalments of interest are not ·constructive notice of dishonor. (*Union Investment Co. v. Wells,* 39 Can. 625.)

We admit the rule to be that when fraud or illegality is set up as a defense in an action on a negotiable instrument, the plaintiff is required to show that he purchased the note in good faith, for value, before maturity, but the rule goes further, and it is the law that when the holder of a note, in addition to introducing the note, shows by competent evidence that he purchased the same before maturity for value in the usual course of business, he has met the burden required by the rule. (*Drovers' Nat. Bank v. Blue,* 110 Mich. 31, 64 Am. St. 327, 67 N. W. 1105; *Reeve v. Insurance Co.,* 39 Wis. 520.)

R. T. Morgan and Ezra R. Whitla, for Respondents.

The defendants simply take the position that when they have shown fraud in the inception of the note and defect or infirmity in the title of the person who is negotiating the instrument, the burden is then upon the person claiming to be a holder to prove that he or some other person through whom he claims title is the holder in due course, and sec. 3516, Rev. Codes, shows clearly that when such facts are shown, the plaintiff must show that he had no notice of any infirmity in the instrument or defect in the title of the person who negotiated it to him. Under subdivision 4, sec. 3509, the question as to whether or not the plaintiff is a *bona fide* holder is a question of fact for the jury to determine.

The notes of McLaughlin Bros. are so fraudulent, and such fact is so well known, that it becomes incumbent upon the one purchasing the same to show that he did not know of the condition surrounding the execution of the note, as these notes have been so often declared fraudulent by the courts of last resort. (*Union National Bank v. Winsor,* 101 Minn. 470, 118ʼ Am. St. 641, 112 N. W. 999, 11 Ann. Cas. 204; *Union Invest-*

ment Co. v. Wells, 39 Can. 625, 11 Ann. Cas. 33; City National Bank v. Jordan, 139 Iowa, 499, 117 N. W. 758; Schultheis v. Sellers, 223 Pa. 513, 72 Atl. 887, 22 L. R. A., N. S., 1210; Cedar Rapids National Bank v. Myhre, 57 Wash. 596, 107 Pac. 518; City National Bank v. Jordan, 139 Iowa, 499, 117 N. W. 758; McNight v. Parsons, 136 Iowa, 390, 125 Am. St. 265, 113 N. W. 858, 22 L. R. A., N. S., 718, 15 Ann. Cas. 665; Tredick v. Walters, 81 Kan. 828, 106 Pac. 1067; Merchants' National Bank v. Sullivan, 63 Minn. 468, 65 N. W. 924; Merritt v. Duncan, 7 Heisk. (Tenn.) 156, 19 Am. Rep. 612; Bank v. Bennett, 8 Ind. App. 679, 36 N. E. 551; Grant v. Reno, 114 Mich. 41, 72 N. W. 19; Conley v. Winsor, 41 Mich. 253, 2 N. W. 31; Mace v. Kennedy, 68 Mich. 389, 36 N. W. 187; Griffith v. Shipley, 74 Md. 591, 22 Atl. 1107, 14 L. R. A. 405; Arnd v. Aylesworth (Iowa), 123 N. W. 1000.)

"An overdue and unpaid instalment of interest known to the indorsee at the time of the purchase dishonors negotiable paper and renders it subject, in the hands of the purchaser, to existing defenses between the original parties, the same as overdue and unpaid instalments of the principal." (Bank v. Forsyth et al., 67 Minn. 257, 64 Am. St. 415, 69 N. W. 909; Chouteau v. Allen, 70 Mo. 290, 339; Newell v. Gregg, 51 Barb. (N. Y.) 263; Bank v. Scott Co., 14 Minn. 77, 100 Am. Dec. 194; Bank v. Kidder, 106 N. Y. 221, 60 Am. Rep. 443, 12 N. E. 577; Parsons v. Jackson, 99 U. S. 434, 25 L. ed. 457; Simmons v. Taylor, 38 Fed. 687.)

AILSHIE, J.—The appellant is the indorsee of the note sued upon. The note was executed by the respondents in favor of McLaughlin Bros. in part payment for an imported stallion. The sale was made at Coeur d'Alene City through one V. E. Woods, as agent for the McLaughlin Bros. At the time the sale was made and the promissory note was executed, Woods, acting as agent for the vendors of the horse, executed and delivered to the vendees, who are the makers of the note, a certificate of warranty and guaranty as to the utility and general condition of the animal sold. The note came due on the 29th day of March, 1908, but prior thereto

and on the 6th day of February, 1908, the payees, the Mc-
Laughlin Bros., sold, assigned and transferred the note to the
appellant herein. At the time of the sale of the note to
appellant, the respondents were in default of the payment of
the annual interest due thereon. Defendants refused to pay
the note on the ground of failure of consideration and fraud
in the inception thereof, and the holder of the note there-
upon commenced this action.

The defendants set up as a defense that the note was pro-
cured through fraud and deception, and pleaded the guaranty
which was given with the animal at the time of the execu-
tion of the note, and further alleged a breach of the guaranty
and warranties, and alleged that the plaintiff was not a *bona
fide* holder of the note in due course. The evidence was sub-
mitted to the jury and they returned a verdict in favor of
the defendants from which plaintiff appealed.

The evidence in the record is abundant to establish the first
proposition, namely, that there was fraud in the inception of
the contract; in other words, that the note was procured
through fraudulent misrepresentations. It was shown by
competent evidence that the horse was not what he was repre-
sented to be, and this defect was of such character that it must
have been known to the vendors at the time the sale was
made, and the facts and circumstances all point to that con-
clusion. The respondents gave notice to the agent or agents
of the McLaughlin Bros. at Spokane as soon as they discov-
ered the defects and condition of the horse, which was within
a very short time after the purchase. It is claimed, however,
in the briefs that it was impossible for the unsound condition
of the horse and his defects to be discovered in so short a
period of time. That might be true under some circum-
stances, but the condition in which he was at the time and
his defects as to loss of vital energy were of such a character
that they could as well be discovered and their effect fore-
told at the time and in the manner the discovery was made
as could have been done months later. We conclude with-
out any hesitation that the first proposition was sufficiently

established to go to the jury and to justify a verdict that there was fraud in the inception of the contract.

The second proposition involves the construction of our statute. It is contended by respondent that under the provisions of sec. 3516, Rev. Codes, the moment the defendants proved that McLaughlin Bros.' title to the note was defective and subject to defenses, the burden was at once shifted from the defendants to the plaintiff of showing that he was a *bona fide* holder of the note in due course. Sec. 3516, Rev. Codes, provides as follows:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Sec. 3509, Rev. Codes, defines a holder in due course as follows:

"A holder in due course, is a holder who has taken the instrument under the following conditions: First, that the instrument is complete and regular upon its face; Second, that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; Third, that he took it in good faith and for value; Fourth, that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The foregoing sections of the statute are parts of what is commonly designated as the uniform negotiable instrument law which has been adopted in this state, and which is now in force in most of the states in the Union. We are therefore not without judicial expression and construction on these provisions of the statute. This same statute is in force in the state of Washington, sec. 3516 of our statute corresponding to sec. 59 of the negotiable instrument law of

Washington, while sec. 3509 of our statute corresponds to sec. 52 of the Washington statute.

In *Cedar Rapids Nat. Bank v. Myhre Bros.,* 57 Wash. 596, 107 Pac. 518, the supreme court of Washington had occasion to consider these two sections of the statute. The question before them was whether the plaintiff was a *bona fide* holder of a promissory note that had been given for some worthless jewelry. The court first observed: "The testimony is overwhelming that the jewelry was worthless and that the note was obtained by misrepresentation and fraud." After citing and quoting the above-mentioned sections of the statute, the court concluded: "So it appears that the burden was upon the plaintiff in this case to show that it was a holder in good faith, and the question of whether or not that burden was successfully met was one which was submitted to the jury, and by its verdict it has decided that question against the appellant. On both questions involved there was sufficient testimony for the legal consideration of the jury, and their verdict will, therefore, not be disturbed."

In *Tredick v. Walters,* 81 Kan. 828, 106 Pac. 1067, the supreme court of Kansas, in considering the effect of a certain contract which was executed in connection with the promissory note sued upon and the burden of proving the good faith of the indorsee of the note, said:

"This admission was not that the appellant knew of these contracts at the time he purchased the notes, but it stood in lieu of proof of the contracts at the time of the trial. We think that the contracts afforded sufficient evidence of illegality to shift the burden of proof which usually rests upon the defendant to prove the plaintiff's knowledge of the illegality at the time of purchasing the notes, and to place the burden upon the appellant to prove that he bought the notes before maturity, in due course of business, for value, and without any notice of the illegality of the consideration between the maker and the original payee, his grantor."

In *Schultheis v. Sellers,* 223 Pa. 513, 72 Atl. 887, 22 L. R. A., N. S., 1210, the supreme court of Pennsylvania, in con-

sidering the burden of proof as to the good faith or lack of good faith of the indorsee of the promissory note, said:

"Almost a century ago, in *Holme v. Karsper*, 5 Binn. (Pa.) 469, it was held, in an action on a promissory note, that the holder was required to show the consideration he paid for it and how it came into his hands, where the defendant proved that it was put into circulation fraudulently. This rule has been recognized and enforced in subsequent decisions. In *Lerch Hdw. Co. v. First National Bank*, 109 Pa. 240, it is said in the opinion of the court (page 244) : 'To support an action by the indorsee of negotiable paper, against the maker, in the first instance it is only necessary for the plaintiff to put the paper in evidence. Then, if the defendant proves that the paper was put in circulation by fraud or undue means, his defense will prevail, unless the plaintiff establishes that he acted fairly and paid value.' "

The court then adds, "This is now the statutory declaration of the law," and proceeds to quote sec. 59 of the negotiable instrument law of that state which corresponds exactly with sec. 3516 of our Revised Codes. So it seems to have been the general rule of the law-merchant long previous to the adoption of the uniform negotiable instrument law that in an action by the indorsee of a negotiable instrument against the maker, the indorsee might introduce the paper and then rest upon the *prima facie* presumption that he was a *bona fide* purchaser in due course, but that as soon as this presumption was overcome by proof tending to show that the paper was put into circulation by fraud or procured through fraudulent representations, the burden at once shifted to the indorsee to prove his good faith and that he had no notice of the fraud or defects in the instrument. Whatever the rule may have been, however, the statute, sec. 3516, *supra*, settles the question in this state.

It is contended by appellant that mere suspicious circumstances are not sufficient to put a purchaser of a note on inquiry, and that it is necessary in order to defeat his right of recovery to either show actual notice of the fraud or notice

of such facts and circumstances as would charge him with actual bad faith in taking the paper without investigating the circumstances under which it was issued. In support of this position counsel rely on sec. 3513, Rev. Codes, which reads as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We readily agree with this contention. We think it is only actual knowledge of the defect or infirmity or notice of such facts and circumstances as would put a man on inquiry, and would charge him with bad faith or the imputation of dishonest dealing that was intended by the statute to defeat a recovery. This view is abundantly supported by the authorities.

Mr. Justice Weaver, speaking for the supreme court of Iowa in *Arnd v. Aylsworth*, 145 Iowa, 185, 123 N. W. 1001, said:

"In some of the states it seems to have been held that one who takes a transfer of negotiable paper under circumstances to put a reasonable person on inquiry as to defenses against it is considered as having notice of the facts which such inquiry would develop; but the more general trend of the decisions from an early day has been to the effect that mere ground of suspicion as to possible defects in the title of the negotiator or of the existence of defenses to the instrument negotiated is not the equivalent of notice to the transferee, and, to be regarded as an innocent purchaser, he need not as a matter of law be diligent to investigate the circumstances of the origin of the paper, though, if the negligence be of a marked or gross character, it may be competent to establish the *mala fides* of the purchase. That which will charge the paper in his hands with prior equities and defenses is actual or direct notice of the facts, or, in the absence of such notice or knowledge, the existence to his notice of such facts or circumstances that his action in taking the paper amounts to bad faith. Of this class of cases an illustrative example is

*Goodman v. Simonds,* 61 U. S. 343, 15 L. ed. 934, which is a leading case upon the subject. . . . .

"Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place, and manner of the transaction, its conformity to, or its departure from, the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law. Observing this principle it has frequently been held that a denial of notice by the purchaser, though he be uncontradicted by any other witness, is not sufficient to justify a directed verdict in his favor."

In considering the same question, Mr. Chief Justice Rudkin, speaking for the supreme court of Washington in *Gray v. Boyle,* 55 Wash. 578, 133 Am. St. 1042, 104 Pac. 829, quoted with approval the following extract from Crawford's Annotated Negotiable Instrument Law, p. 68: "The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance. He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would

have taken, nevertheless, unless he acted *mala fide*, his title, according to settled doctrines, will prevail."

We are in full accord with this construction of the law. In the case at bar the plaintiff did not offer any evidence as to his lack of knowledge of the fraud and misrepresentations practiced by McLaughlin Bros. in procuring this note. He simply rested by showing that the note was sent to him through the mail for discount prior to maturity and that he paid the holders of the note its face value. It appears, also, that the defendants resided in Kootenai county, Idaho, and that plaintiff resides at Minneapolis. The record fails to show whether the plaintiff was previously acquainted with any of the defendants or with the McLaughlin Bros. It stands to reason, however, that the plaintiff must have had some information, either as to the financial standing of some one or all of the defendants or of the McLaughlin Bros., or else he would not have invested the sum of $1,125 in this note. Of course, if he knew the McLaughlin Bros. and knew them to be financially responsible, then he could safely purchase the note on their indorsement. If, however, he did know them, judging from the reported cases in which they have figured, he must have known that they were engaged in just the kind of business that is disclosed by this record. The following cases reported from courts of last resort show that this is not the first transaction of the kind in which they have been engaged: *Union Investment Co. v. Wells,* 39 Can. 625, 11 A. & E. Ann. Cas. 33; *Union National Bank v. Winsor,* 101 Minn. 470, 118 Am. St. 641, 112 N. W. 999, 11 Ann. Cas. 204. The plaintiff, Union Investment Co., in the former of the above cases seems to have been the company of which appellant herein is secretary and treasurer. If, on the other hand, he did not know the McLaughlin Bros., he must have had some information as to the financial standing of some one or all of the defendants, and that information might have given him some intimation as to the nature or character of the transaction out of which the notes arose. Whatever the circumstances may have been, it still remains true that the question of the good faith of the purchaser of the note was

one of fact instead of law, and the jury had a right to determine it in the light of all the facts and circumstances presented in the case.

It has been contended by the respondent that the fact that there was one or more instalments of interest overdue on this note was of itself evidence that the appellant did not purchase the note in due course. Upon this question the authorities seem to be divided, but we are inclined to think that the better reason is with the holding that a mere failure to pay a periodical instalment of interest does not amount to a dishonor of a negotiable instrument, and will not charge the purchaser with notice of any fraud or misrepresentation in the contract or in the issuance and circulation of the note. This question is very exhaustively treated in *Union Investment Co. v. Wells,* 39 Can. 625, 11 A. & E. Ann. Cas. 33. In a note to that case, the editors say, "There is a conflict in the decisions as to whether a negotiable instrument becomes overdue upon the failure to pay a periodical instalment of interest, where the principal itself is not yet due. The weight of authority supports the rule that a mere failure to pay a periodical instalment of interest will not amount to a dishonor of a negotiable instrument and will not render the instrument overdue." The authorities cited in the note will disclose, however, that it has been frequently held that knowledge on the part of a purchaser of overdue instalments of interest constitutes a circumstance which may be considered by the jury along with other facts and circumstances in determining the good faith of the purchaser of the note.

From what has been said it follows that the judgment in this case should be affirmed, and it is so ordered. Costs awarded in favor of respondents.

Sullivan, C. J., concurs.