(July 13, 1912.)

FRED BROWN, as Receiver of the IDAHO STATE BANK Respondent, v. ANNIE I. MILLER, Appellant.

[125 Pac. 981.]

DEFENSE TO PROMISSORY NOTE—MAKER AND PAYEE—FRAUD IN PROCUR-ING NOTE—HOLDER IN DUE COURSE—GOOD FAITH.

(Syllabus by the court.)

1. Where the principal owner in a bank, who was vice-president and general manager of the bank, was indebted to the bank on un-secured notes in the sum of $76,000 at the time it became insolvent and went into the hands of a receiver, and while the receiver was in charge thereof such managing agent procured one of the principal depositors in the bank, who held a certificate of deposit for $61,000 and to whom he had for many years sustained a confidential relation, to surrender up to the receiver such certificate of deposit and give her promissory notes for the difference between the amount of such certificate of deposit and the vice-president and managing agent's promissory notes, and such transaction was procured through fraudu-lent practices and fraudulent representations by the vice-president and managing agent of such insolvent institution, and the receiver had no actual knowledge of the fraudulent practices and representa-tions but had knowledge of the relation such officer had previously sustained to the bank and of his indebtedness thereto, and with this knowledge surrendered up the notes amounting to $76,000 and re-ceived the certificate of deposit from the depositor and her promis-sory notes for the difference and received all the stock held by the managing agent in such institution, the receiver, as the representative and trustee of the depositors of such institution and of such insolvent institution, is chargeable with notice of the fraud practiced in pro-

curing such note, and the defense of fraud in the inception thereof is a good defense against the receiver as the payee of such note.

2. Where fraud has been practiced by a third party in procuring the maker of a note to execute such note in favor of the payee, and, although the payee does not have actual notice of such fraud, if he participates in the transaction and gives a part of the consideration therefor and receives advantages and benefits therefrom, the law will put him on notice as to the whole consideration and circumstances under which such note was executed.

3. Facts and circumstances as disclosed by the record in this case examined, considered, and *held* sufficient to put the receiver of an insolvent bank upon notice as to the fraud practiced in the inception and execution of a promissory note, and that such receiver is not a holder in due course within the meaning and purview of the statute.

APPEAL from the District Court of the Fourth Judicial District for Blaine County.   Hon. Edward A. Walters, Judge.

Action by the receiver of an insolvent bank against the maker of certain promissory notes.   Judgment for the plaintiff.   Defendant appealed.   *Reversed.*

R. F. Buller, McFadden & Brodhead, and Alfred A. Fraser, for Appellant.

In a suit between the original parties to a promissory note, or in a suit between the assignee, or indorsee of a note, and the maker, the defense of fraud, or want of, or failure of, consideration can always be set up unless the plaintiff can show that he is an innocent *bona fide* indorsee for value, before maturity, and without any notice (not even notice sufficient to put him on inquiry) as to the existence of the alleged fraud or failure of consideration.   (*Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525, Ann. Cas. 1912C, 302; *Union Stockyards v. Bolan,* 14 Ida. 87, 125 Am. St. 146, 93 Pac. 508.)

The payee of a promissory note is not a *bona fide* holder thereof, and in an action brought by the payee the note is subject to any defense which the maker may have against it, (*Hagan v. Bigler,* 5 Okl. 575, 49 Pac. 1011.)

Where the proof shows that the note was procured by fraud, that constitutes a valid defense, as against the payee, if he seeks to recover upon it, and it is equally good against the in-

dorsee, or assignee, unless he is an innocent *bona fide* holder for value, and the burden of proof is upon him to show that he is such. (*Jordan v. Grover,* 99 Cal. 194, 33 Pac. 889; *Graham v. Larimer,* 83 Cal. 173, 23 Pac. 286; *Stewart v. Lansing,* 104 U. S. 505, 26 L. ed. 866; Daniel on Neg. Inst., 4th ed., sec. 815; *Vosburg v. Diefendorf,* 119 N. Y. 357, 16 Am. St. 836, 23 N. E. 801; *Smith v. Livingston,* 111 Mass. 342; *Kellogg v. Curtis,* 69 Me. 212, 31 Am. Rep. 273; *Nat. Bank v. Mackey,* 5 Kan. App. 437, 49 Pac. 324; *Morton v. Rogers,* 14 Wend. (N. Y.) 575.)

Even if Coffin had not been an innocent party to the contract, and had been innocent of any fraud, and Cramer had not been his agent in the transaction, either actually or constructively, he would still be estopped from claiming exemption from the consequences of Cramer's fraud by the fact that he accepted the benefits and held on to the proceeds. (Perry on Trusts, 3d ed., sec. 211; *Graves v. Spier,* 58 Barb. (N. Y.) 349; *Bennett v. Judson,* 21 N. Y. 238.)

Where a relationship of trust and confidence exists between the parties, or that of trustee and *cestui que trust,* the law requires the utmost good faith on the part of the trustee in dealing with the property of the *cestui que trust.* (Morse on Banking, sec. 125; *Trustees v. Bossieux,* 3 Fed. 817, 4 Hughes, 387; Perry on Trusts, 3d ed., sec. 194; *Wright v. Smith,* 23 N. J. Eq. 106; *Falk v. Turner,* 101 Mass. 494.)

Sullivan & Sullivan, for Respondent.

Facts and circumstances to impart notice must have been such as would establish bad faith. (*Winter v. Nobs,* 19 Ida. 26, 112 Pac. 525, Ann. Cas. 1912C, 302. )

The maker cannot successfully defend on the ground of no consideration by reason of fraud, or unlawful purpose for which the money was to be used, between himself and a third party, unless he can establish that the payee had knowledge of the fraud or unlawful purpose. (*Camas Prairie State Bank v. Newman,* 15 Ida. 719, 128 Am. St. 81, 99 Pac. 833, 21 L. R. A., N. S., 703; *Lookout Bank v. Aull,* 93 Tenn. 645, 42 Am. St. 934, 27 S. W. 1014.)

Where A, at the instance of B, was induced to give his note to C, the latter surrendering security to B at the time of the transfer, A cannot plead want of consideration from B as a defense to an action on such paper by C, the latter being regarded in the light of *bona fide* holder for value. (7 Cyc. 925, notes; *Cagle v. Lane,* 49 Ark. 465, 5 S. W. 790; *South Boston Iron Co. v. Brown,* 63 Me. 139; *Monroe v. Bordier,* 8 C. B. 862; *Poirer v. Morris,* 22 L. J. Q. B. 313.)

It is no defense to an action by the payee against the maker of a note that fraud was practiced upon the latter by his comaker, where the payee was innocent of fraud. (Joyce on Defenses to Com. Paper, sec. 133; *Anderson v. Warne,* 71 Ill. 20, 22 Am. Rep. 83; *Fulford v. Block,* 8 Ill. App. 284; *Vass v. Riddick,* 89 N. C. 6.)

AILSHIE, J.—This action was commenced by the receiver of the Idaho State Bank for the collection of three promissory notes executed by the appellant for the aggregate sum of $30,427.32. The appellant set up the defense that the notes were procured through fraud and misrepresentation and that the receiver of the bank had notice thereof or was chargeable with notice of the fraud practiced and which entered into the execution of the notes. The court found in favor of the receiver of the bank and the defendant appealed.

On the 31st day of August, 1910, the Idaho State Bank of Hailey, Idaho, was closed by the bank commissioner on account of being insolvent and unable to carry on its business in due course. H. N. Coffin was thereupon appointed receiver and duly qualified as such on the first day of September. When the bank closed Leo Cramer, vice-president, director and general manager, was indebted to the bank on his individual and unsecured notes in the sum of $66,721.70. His wife, Sarah Cramer, was indebted on an individual unsecured note in the sum of $5,081.11, and John Cramer, a brother of Leo Cramer, was indebted to the bank on his unsecured promissory note in the sum of $5,081.11, making an aggregate indebtedness of $76,883.92. When the bank closed, the appellant Annie I. Miller, had on deposit therein as represented

by certificate of deposit the sum of $61,966.16. She was at the same time indebted to the bank as evidenced by her two promissory notes, $14,900, and the further sum of $393.42 overdraft, and it appears that an agreement existed between appellant and the bank that these notes and any overdraft which she might make on the bank should be paid and retained out of the cash she had on deposit in the bank as represented by her certificates of deposit. At the time the bank failed, Leo Cramer was the manager and controlling spirit in the bank and owned some 311 shares of the capital stock of the bank, and the appellant Miller was at that time in Europe. She did not learn of the failure of the bank until she landed in Quebec and nothing of the detail of the failure until she arrived in Shoshone, Idaho. Upon her arrival at Shoshone, and before the departure of a train from Shoshone to Hailey, Leo Cramer met her and took her in his automobile to his home in Hailey. There he began negotiating with her with a view to having her take up his indebtedness of $76,000 to the bank, which included his individual note and those of his wife and brother,—which, by the way, all seemed to have been his indebtedness,—and to have Mrs. Miller turn over in payment for these notes her certificate of deposit in the bank and to execute her individual note for the balance. He at the same time promised and agreed to give her collateral and securities of various kinds which he claimed were far in excess of this indebtedness. Cramer had been Mrs. Miller's banker for many years and her confidential adviser in such matters. About the 26th of September Cramer went to H. N. Coffin, receiver of the bank, with a pencil memorandum proposing in substance an adjustment of his indebtedness to the bank under the foregoing terms and conditions, except so far as the evidence discloses, he did not advise the receiver of the consideration which he was giving Mrs. Miller for her executing these notes and turning over her certificates of deposit and taking up the Cramer indebtedness. The receiver took this memorandum to his attorneys and had an agreement drawn, of which the following is a copy, and delivered it to Cramer with direc-

tion that Cramer sign it and have Mrs. Miller sign it, which was accordingly done:

"WHEREAS, The Idaho State Bank of Hailey, Idaho, is insolvent and now in the hands of H. N. Coffin, the duly appointed, qualified and acting Receiver of said Bank:

"WHEREAS, the undersigned Leo Cramer, one Sarah Cramer and one John Cramer, are indebted to the Idaho State Bank, which indebtedness is represented by the following notes, to wit:

| "Note No. 2200, | Leo Cramer, | $16,000, | Int. | 259.56 | 16,259.56, |
|---|---|---|---|---|---|
| Note No. 1938, | Leo Cramer, | 17,734, | Int. | 287.89 | 18,021.89, |
| Note No. 3207, | Leo Cramer, | 3,500, | Int. | 52.89 | 3,552.89, |
| Note No. 2621, | Leo Cramer, | 27,500, | Int. | 1367.36 | 28,867.36, |
| Note No. 2202, | Sarah Cramer, | 5,000, | Int. | 81.11 | 5,081.11, |
| Note No. 2201, | John Cramer, | 5,000, | Int. | 81.11 | 5,081.11, |

and the said Leo Cramer desires that said notes be paid and that he be released from any further liability to said bank; and

"WHEREAS, the undersigned, Annie I. Miller is now the owner and holder of the following certificates of deposit issued by said bank, to wit:

| C. D. No. 316, | H. E. Miller Est. | 10,000, | Int. | 158.32 | 10,158.32 |
|---|---|---|---|---|---|
| C. D. No. 362, | Annie I. Miller, | 21,000, | Int. | 332.64 | 21,332.64, |
| C. D. No. 458, | Annie I. Miller, | 30,000, | Int. | 475.20 | 30,475.20, |

and the said Annie I. Miller is desirous of applying the full amount of said certificates of deposit, and interest due thereon, in payment of the foregoing described notes:

"Now, therefore, in consideration of the premises aforesaid the undersigned, Leo Cramer and Annie I. Miller, hereby agree that the above certificates of deposit and interest amounting to the sum of $61,966.16 shall be applied in payment of the notes and interest of Leo Cramer, Sarah Cramer and John Cramer, aforesaid, amounting to $76,863.92, and the difference of $14,897.76 due the said Idaho State Bank shall be assumed by said Annie I. Miller, and notes given by her to cover the same as follows: $12,000.00 payable one year after date, and $2,897.76 payable February 1, 1911, and both notes to draw interest at the rate of 8% per cent per annum.

"AND IT IS FURTHER UNDERSTOOD AND AGREED that the two notes of Annie I. Miller, now held by the Idaho State Bank, amounting to $14,900.00 shall be renewed for one year at 8% interest, and the overdrafts, $292.42, and Annie I. Miller, administratrix, $101.70, to be taken up by her note for $394.12, payable one year after date with interest at the rate of 8% per annum.

"AND the said Leo Cramer further agrees to turn over to the Idaho State Bank, without compensation, upon the acceptance of the agreement by said Receiver, capital stock of said bank standing in his name on the books of said bank to the amount of three hundred eleven shares, and also certificate of five shares in the name of William Black, and certificate of five shares in the name of J. J. Plumer, making a total of three hundred twenty-one shares.

"IN WITNESS WHEREOF, we have hereunto set our hands this 26th day of September, 1910.

[Signed]   "LEO CRAMER.<br>"ANNIE I. MILLER.

"Witness, HUGH CRAMER.

"The above and foregoing is hereby approved and accepted this 27th day of September, 1910.

"H. N. COFFIN, Receiver."

In pursuance of the terms of this agreement, Mrs. Miller executed the promissory notes therein provided for. The receiver had never seen Mrs. Miller until she came in to the bank to sign up the notes which she executed in pursuance of the terms of the agreement and at which time she delivered to him the certificates of deposit. He testifies that he did not see her any more or talk with her until the trial of this case. The Cramer notes, aggregating over $76,000, were surrendered up to Cramer and Mrs. Miller's certificates of deposit were surrendered up to the receiver and canceled, and her notes, which represented the difference between the amount of the Cramer indebtedness and her certificates of deposit, and also the amount of her individual indebtedness to the bank, were given to the receiver of the bank aggregating the sum of $30,427.32. Cramer delivered to Mrs. Miller some of

the securities which he agreed to deliver and failed wholly to deliver other securities. He furnished her at the time a memorandum setting forth the list of securities he promised to give her and the values he placed on the property and also the values which he gave as ''selling values at forced sale.'' The total value placed on the property by Cramer was $120,100, and the selling value at forced sale he placed at $61,200. Mrs. Miller did not investigate the values or condition of these securities, but took Cramer's word for it. She did not see or consult with anyone else but Cramer. Cramer kept her at his home during all the time these negotiations were on. It turned out, however, that when she did find the true situation the property was practically all encumbered and that the security given was of very little value. The trial court found that the property was not in fact of the value represented by Cramer or anything like such value and that it would not have exceeded at the time ''the value of more than a few thousand dollars.''

The court also finds that Cramer made false and fraudulent representations to Mrs. Miller, both as to the solvency of the bank and the value of the property he would give her as security, and also with reference to the reorganization of the bank, and that he deceived her and imposed upon her in this transaction; and he also finds that H. N. Coffin, the receiver, had no actual knowledge of the fraud or misrepresentation of Cramer. The only sum ever received by Mrs. Miller under this agreement and transaction was $1,900, which was realized from certain personal property which Cramer subsequently sold, and the money was turned over to Mrs. Miller to apply on his indebtedness to her. It seems that at the same time of these transactions Cramer was personally indebted to Mrs. Miller in a sum to exceed $8,000, which was not included in this transaction and on which no settlement or adjustment was apparently made. Upon the trial, appellant offered to surrender up all the securities and money she had received on the transaction to be dealt with as the court might in its judgment deem just and equitable.

The decision of this case must necessarily turn upon one or both of two legal propositions: First, it is contended that this is a controversy between the maker and payee of promissory notes, and that the action is subject to the defense of any fraud which may have been practiced in procuring the execution of the notes; and, second, it is contended that upon the unmistakable facts disclosed by the record the bank cannot successfully maintain that it is a holder of this note in due course within the purview and meaning of sec. 3509 of the Rev. Codes, and the decisions of this court construing that section and related sections of the statute. (*Winter v. Nobs*, 19 Ida. 18, 112 Pac. 525, Ann. Cas. 1912C, 302; *Park v. Johnson*, 20 Ida. 548, 119 Pac. 52; *Shellenberger v. Nourse*, 20 Ida. 323, 118 Pac. 508; *Winter v. Hutchins*, 20 Ida. 749, 119 Pac. 883; *Vaughn v. Johnson*, 20 Ida. 669, 119 Pac. 879; and *Park v. Brandt*, 20 Ida. 660, 119 Pac. 877.)

In support of the first proposition namely, that this is purely an action between the payee and maker of a promissory note and that any fraud or misrepresentation which was practiced in procuring the execution of the note is chargeable to the payee, even though that fraud was practiced by a third party, counsel cite and place special reliance on *Morton v. Rogers*, 14 Wend. (N. Y.) 576, and *Hackley v. Draper*, 60 N. Y. 88. Counsel for respondent, on the other hand, cite a number of authorities which hold that the payee named in a note in an action between himself and the maker may often be treated as a *bona fide* holder with reference to certain defenses of fraud or misrepresentation where the fraud was practiced or the misrepresentation was made by a third party who was not the agent or representative of the payee and whose fraud or misrepresentation was unknown to the payee at the time of receiving the paper. (*Lookout Bank v. Aull*, 93 Tenn. 645, 42 Am. St. 934, 27 S. W. 1014; *Boston etc. Co. v. Steuer*, 183 Mass. 140, 97 Am. St. 427, 66 N. E. 646; *Armstrong v. Am. Exc. Bank*, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. ed. 747; 7 Cyc. 925; Eaton & Gilbert, Commercial Paper, p. 305.) *Morton v. Rogers* and *Hackley v. Draper* clearly support the contention made by counsel for appellant.

It is unnecessary, however, for us to consider in this case the question as to whether or not a payee will be bound by fraud practiced by a third party in procuring the execution of the note where the third party is in no way connected with the payee in the transaction and is wholly a stranger to the transaction so far as the payee is concerned. The facts of this case remove it from that class of cases and render the authorities on that subject inapplicable to this case. Here some kind of consideration purported to pass from each to all the others. We shall therefore consider the remaining questions together.

H. N. Coffin, who was receiver when this transaction took place, testifies that he had no actual notice of any fraud or misrepresentation practiced by Cramer, and the court so finds. The respondent, therefore, cannot be bound by any actual notice that has been brought home to him. If he is to be bound at all, it is by constructive notice arising either by operation of law or from other facts and circumstances of which he had notice. Under the facts as heretofore recited, the receiver would not have been justified in believing or considering that Cramer was acting as the agent of Mrs. Miller. Neither the letter of the law nor the equity of the case would permit him to presume that Cramer was representing himself, as he was, in negotiating a transaction whereby his indebtedness to the bank, aggregating $76,000, was to be paid off and liquidated, and at the same time presume that he was also acting as the *agent* of the person who was paying off this indebtedness and liquidating his obligation to the insolvent bank. The very statement of the proposition shows that it involves a dual relation which he could not, either in law or good conscience, represent, and the receiver of the insolvent bank could not be protected or justified in assuming that Cramer occupied this dual capacity at one and the same time. This fact is made more prominent when we remember that Cramer had been the controlling spirit, the vice-president, director and managing agent of the bank, from the time of its organization down to the day it closed its doors as an insolvent institution. He was at the same time the largest debtor to the institution; and it can safely be said that if he himself was solvent and had

liquidated his own obligation to the bank prior to closing its doors, that it would not have been at that time under the necessity of going into the hands of a receiver. In the light of these conditions, the receiver who had been appointed by the court to take charge of this insolvent institution could not accept notes from Mrs. Miller, who was at the same time one of the largest depositors in the bank and one of the very persons whom this receiver was representing as a trustee, in payment of the obligations of this largest debtor, vice-president and managing agent of the institution, without making some investigation and inquiry as to the cause and consideration for a transaction of such magnitude. He must know why a maker of a note of such a large sum is executing and delivering it to him as the receiver of an insolvent institution. The receiver of the bank cannot successfully defend the charge of fraud and misrepresentation here, on the ground that the whole transaction took place between Cramer and Mrs. Miller, and that the whole consideration for these notes sued upon in this case passed from Cramer to the maker of the notes. There were other considerations as well, and the receiver of the bank, acting as trustee for the institution, passed a part of the consideration, and when he entered into this deal he became chargeable with notice of the remaining consideration which passed from the third party to the transaction, namely, Cramer. Cramer's chief purpose in this was apparently the liquidation of a $76,000 unsecured indebtedness to the bank. Incidentally, according to his representation to Mrs. Miller, he claimed that the bank was in fact solvent and able to pay out dollar for dollar, and that by her taking up his obligation it could be reorganized and everybody be paid off in full. On the other hand, the bank was securing in this one transaction the liquidation of $61,000 of its liability to a depositor; in other words, by reason of this transaction alone it reduced its liabilities to depositors in the sum of $61,000 and thereby increased the dividends that would be paid to the other depositors to that extent. At the same time it procured $30,000 worth of notes executed by Mrs. Miller, which the receiver testified he considered good for their face value. In addition

to this, the receiver of the bank was to receive 321 shares of the capital stock of the bank, 300 shares of which belonged to Cramer and ten to Black and Plummer, as will be seen from the last paragraph of the agreement hereinbefore set out. This agreement was drawn under the direction of the receiver of the bank. It is true that it was drawn from memoranda furnished by Cramer, but the receiver certainly knew why he was to receive this bank stock, and he must have known that there was a consideration moving from some source for its being turned over to him. He testifies that there had been some talk between him and Cramer with reference to reorganizing the bank.

It seems to us that the receiver in this case was clearly chargeable with at least constructive notice that Cramer was insolvent as well as the bank of which he was vice-president, director and managing agent. Good faith at least put him on his inquiry. The receiver had been in charge of this institution for about twenty-five days. He had charge of the books of the corporation; he had been in a position to know at least the general condition of the institution,—who had been the stockholders, directors and agents and employees of the institution. He had likewise been in a position to know who were the depositors and who the debtors of the institution. He was informed that Cramer was one of the principal owners and the controlling spirit in the institution. He also knew that Cramer was one of the largest debtors of the institution, and that this indebtedness was unsecured. *He was chargeable, therefore, with notice that Cramer was either insolvent and unable to pay this debt or that he was so embarrassed and tied up that he could not pay or that he had defrauded the institution.* One of these conclusions was inevitable. *These facts were sufficient to put the receiver on his inquiry.*

Two propositions are quite clear to us: first, that the receiver was so identified with this transaction and took such part as the representative of the bank as to put him on inquiry and charge him, as the representative of the insolvent institution, with notice of the fraudulent practices and representations of Cramer made in securing the execution of the notes

and subject him as a payee to the defense thereof; and, second, that even if the receiver could not be held as a payee in the ordinary course of business, still he would not be a holder in due course within the meaning of sec. 3509, Rev. Codes, for the reason that under the provisions of sec. 3516 the burden of proof was on the receiver to show that he was a holder in due course and that he had no notice of any facts or circumstances that would put him on inquiry. and lead to a discovery of the fraud. Under the provisions of sec. 3516 of the Rev. Codes and the decisions construing the same (*Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525, Ann. Cas. 1912C, 302; *Shellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508), whenever it is shown that the title of any person who has negotiated an instrument was defective, the burden is immediately transferred upon the holder to show that he, or some person under whom he claims, acquired title to the instrument as a holder in due course. Now, it is successfully shown and the trial court has found that these instruments were procured through fraud. It thereupon became incumbent upon the receiver of the bank, in order to maintain his action on the notes, to show that he procured them in due course as defined by sec. 3509. If the receiver in this case was to be held strictly under the rules applicable to the payee of a note, there could be no question but that he would be chargeable at law, whether he knew it in fact or not, that fraud had been practiced in procuring these notes and that the title thereto was defective under sec. 3512. If, however, he could successfully contend that he was not subject to the law applicable to payee, then he must recover as a "holder in due course," and the burden is on him to show this fact. The facts and circumstances as hereinbefore recited were such as to bring him clearly within the rule heretofore announced by this court (*Winter v. Nobs, supra; Shellenberger v. Nourse, supra; Park v. Johnson,* 20 Ida. 548, 119 Pac. 52), and it would be necessary for the court to depart from the rule adhered to in all these cases in order to sustain the judgment in this case. This question has been considered by the court so repeatedly that it is no longer an open question in this state. We are satisfied that the rule

announced in these cases is in accordance with the statute and the dictates of justice and sound public policy. To allow the bank to retain Mrs. Miller's certificates of deposit and collect these notes and the depositors to have such an advantage as this would give them seems unfair and inequitable, and we cannot approve of so doing.

The judgment in this case should be reversed, and it is so ordered, and the cause is remanded, with direction to take further proceedings in accordance with the views herein expressed. Costs awarded in favor of appellant.

In this case Justice Sullivan was disqualified, and Judge Davis of the district court was called to sit in his stead under the provisions of sec. 6, art. 5 of the constitution.

Stewart, C. J., concurs.

DAVIS, District Judge, Dissenting.—I regret that my view of this case makes it necessary for me to dissent from the conclusion reached by the majority of this court.

One of the principal questions for consideration is as to whether or not a payee of a promissory note may become the holder thereof in due course, with a right to enforce payment against the maker, free from any defect. And the authorities definitely furnish an answer in the affirmative. (*Lookout Bank v. Aull*, 93 Tenn. 645, 42 Am. St. 934, 27 S. W. 1014; *Jordan v. Jordan*, 10 Lea (Tenn.), 124, 43 Am. Rep. 301; *Cherry v. Frost*, 7 Lea (Tenn.), 1; *Passumpsic Bank v. Goss*, 31 Vt. 315; *Deardorff v. Foresman*, 24 Ind. 481; *Smith v. Moberley*, 10 B. Mon. (Ky.) 269, 52 Am. Dec. 543; *Armstrong v. American Exc. Bank*, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. ed. 747; *Boston etc. Co. v. Steuer*, 183 Mass. 140, 97 Am. St. 427, 66 N. E. 646; *Watson v. Russell*, 3 Best & S. 34; *Nelson v. Cowing*, 6 Hill (N. Y.), 336; 7 Cyc. 925 (note); Eaton & Gilbert on Commercial Paper, p. 305.)

It is finally established by the findings of the district court, fully supported by the evidence, that Mrs. Miller and Cramer made a separate contract previous to the transaction wherein the receiver joined them in making the agreement in which

the notes sued on herein were given as part consideration.   In making such previous contract, unknown to the receiver of the bank, Cramer committed a fraud upon Mrs. Miller and falsely promised to give her certain property and securities as consideration for certain certificates of deposit and notes to be delivered by her, provided such certificates of deposit and notes could be used in a proposed compromise settlement between them and the receiver of the Idaho State Bank. Thereupon Cramer made a proposition to the receiver, which was accepted by him.   And in pursuance thereof an agreement was entered into by Mrs. Miller and Cramer and the receiver which was approved by the judge of the district court.   The notes in controversy here, payable to the receiver of the bank, were executed by Mrs. Miller and delivered to the receiver in accordance with the terms of each of such contracts, entirely free from fraud or false representations on his part, or by anyone in his behalf.   And in my opinion the receiver had no information of such facts or circumstances as would reasonably put him on inquiry, or amounted to bad faith when he accepted such notes.

The status of principal and agent did not exist in any way, since each party acted entirely on his own account in making such contract.   In making the compromise settlement with Mrs. Miller, the receiver did not stand in the position of trustee, guardian or protector of her interests.   All that was required of him was that he deal in good faith on a fair, equitable basis, without deception or misrepresentation.   And this he did.

The district court found with reference to the contract signed by the receiver "that in pursuance to said agreement all parties thereto complied with the terms and conditions thereof."   It is clear from the evidence that the receiver faithfully complied in every respect with the terms of the contract entered into by him, and that Cramer also did everything required of him by such contract.   Even though the burden is upon the receiver to prove that he acquired title to such notes in due course of business, the evidence clearly establishes to my mind that he received such notes in good

faith and for a valuable consideration, without notice of any infirmity in the instruments, and that he became a *bona fide* holder thereof. Every element of the contract with which the receiver was connected was fair and equitable and was faithfully executed by all parties thereto.

But the judgment of the majority of this court in effect charges the receiver with notice of the terms and conditions of another separate and distinct agreement, privately entered into by Cramer and Mrs. Miller prior to any negotiations with him. And it does not seem just to me that a payee of promissory notes received under such circumstances should be charged with notice of the terms of such a prior and private contract, even though made by parties who later join with such payee in another agreement affecting the same subject matter. To so hold imposes upon such a taker of a promissory note a very serious burden.

For these reasons it does not appear to me fair or reasonable to charge the receiver with constructive notice of the fraud committed by Cramer, even though the receiver may have been aware of the relations of the parties and the condition of their affairs, as set forth in detail in the majority opinion, and assigned therein as facts that should have put the receiver on notice as to the terms of the understanding between Cramer and Mrs. Miller wherein the fraud was committed.

In my opinion, the judgment of the district court should be affirmed, and the receiver of the Idaho State Bank should not be charged with constructive notice of the conditions of the purely personal and private contract between Mrs. Miller and Cramer, entirely applicable to themselves and of no concern to such receiver.

Petition for rehearing denied.