739 P.2d 377

**FIRST SECURITY BANK OF IDAHO, N.A., Plaintiff-Respondent,**

v.

**MOUNTAIN VIEW EQUIPMENT COMPANY, INC., an Idaho corporation; Carl V. Nicholson and Patricia A. Nicholson, husband and wife; and Thomas T. Nicholson and Diane Nicholson, husband and wife, Defendants-Appellants,**

and

**Twin V. Ranches, Inc., an Idaho corporation, Defendant.**

No. 16838.

Supreme Court of Idaho.

June 16, 1987.

Kenneth O. Kreis, Boise, for defendants-appellants.

Michael L. Schindele, Boise, for plaintiff-respondent.

BAKES, Justice.

By this proceeding the appellants, Mountain View Equipment (MVE), Carl V. Nicholson, Thomas T. Nicholson, and their spouses, seek review of a decision of the Court of Appeals, 112 Idaho 158, 730 P.2d 1078, which affirmed a judgment rendered against them on a guaranty contract.

The respondent First Security Bank (bank) brought this action in the district court to collect the unpaid balance of an installment sales contract which was assigned to it by MVE (a farm implement dealer) and which was also secured by guaranty contracts signed by MVE and the Nicholsons. The guaranty contracts gave the bank full recourse against the appellants if the buyer in the assigned installment contract defaulted. When the buyer defaulted the bank invoked the guaranty and demanded payment. The appellants refused to pay, and this suit followed.

At trial, the defendants raised the defense of impairment of collateral, arguing that the bank had negligently failed to preserve the collateral identified in the installment contract. The district court disagreed, holding alternatively that the bank had not caused the impairment in value by

its own acts, and, alternatively, that the guaranties signed by the appellants contained waivers against such a defense.

An appeal was taken, and the case was assigned to the Idaho Court of Appeals. The Court of Appeals affirmed the district court, based on the district court's alternative holding that the appellants had waived the impairment of collateral defense by the express contract language between MVE and the bank. This Court granted a petition for review of the Court of Appeals decision. We affirm the district court, basing our decision on the district court's finding that there was no impairment of collateral by the bank, which finding is supported by substantial competent evidence.

On appeal to this Court, the appellants argue that the district court erred in finding that the bank did not impair the collateral by its acts or omissions. After reviewing the record in a light most favorable to the respondent, *Hazen v. General Store*, 111 Idaho 972, 729 P.2d 1035 (1986), we find that the district court's finding is supported by substantial competent evidence. Factual findings will not be disturbed on appeal when they are supported by substantial though conflicting evidence and will not be set aside unless clearly erroneous. I.R.C.P. 52(a); *Enders v. Wesley W. Hubbard & Sons, Inc.*, 95 Idaho 908, 523 P.2d 40 (1974).

After a trial on February 28, 1986, the district court made extensive findings of fact based on the evidence presented which established that Twin V. Ranches, Inc. (TVR), purchased three pieces of farm equipment from MVE and that MVE financed the purchase by extending credit to TVR. MVE retained a security interest in the equipment pursuant to the MVE/TVR installment sales contract. The contract provided for *annual* payments of principal and interest. MVE then assigned its interest in the contract to the bank. The district court found that under the terms of the MVE/TVR assignment MVE guaranteed TVR's performance and agreed to pay the full balance of the contract, including interest, if TVR failed to perform. Additionally, the court found that Carl V. Ni-

cholson, Thomas T. Nicholson, and their spouses personally signed guaranty contracts with the bank to guarantee any sums owed to the bank by MVE. These findings are not questioned by appellant.

Next, the district court found that the Southern Idaho Production Credit Association (another TVR creditor) made arrangements with TVR to auction some of TVR's property upon which SIPCA held security. Although TVR was not in default on the assigned contract at that time, the bank was contacted by the auctioneer to determine if the three pieces of equipment covered by the contract could be offered for sale at the auction. The court found that the bank instructed the auctioneer to contact MVE. The court further found that MVE instructed the auctioneer to sell the three pieces of equipment for certain specified amounts which would be sufficient to pay off the MVE/TVR installment contract, and that MVE sent a representative to the auction. The evidence showed that MVE's representative was late arriving at the auction, made no independent investigation of the facts, but relied on hearsay from some friends and incorrectly determined that all three pieces of equipment had been sold. The representative then communicated this erroneous information to the officers of MVE. In fact, only one of the three pieces of collateral covered by the contract was sold at the auction held in March of 1983. The two unsold pieces of equipment remained in TVR's possession.

The $20,124.41 proceeds of the sale of the one piece of equipment were paid to the bank. The bank applied the proceeds to the installment contract, resulting in the payment of the next annual installment, making the installment contract paid up through November of 1984. Thereafter, the bank sent MVE a loan summary each month which listed MVE's contingent liability on all of its contracts outstanding, including the TVR/MVE installment contract.

The district court found that one year later, on April 16, 1984, John Hollifield, the president of TVR, contacted the bank and informed the bank that TVR had no money

and was *attempting to resell one of the* pieces of equipment and was not sure where the other small piece of equipment was. At this time the bank on three occasions telephoned the credit manager of MVE to inform him of the situation, but the credit manager was not available and did not return the calls.

TVR failed to make the November, 1984, payment and filed for bankruptcy on November 15, 1984. On November 28, 1984, the bank demanded full payment from both MVE under the dealer financing agreement and from the Nicholsons, based on their personal guaranties. Payment was refused, the bank ultimately filed this action on the guaranties. The primary defense was based on the claim that the bank, by its conduct, had impaired the value of the security. The district court found that while the value of the two remaining pieces of farm equipment had diminished by approximately $18,000, the bank had not caused the impairment. After examining the record, we conclude that the district court's findings are not clearly erroneous and, accordingly, we affirm the judgment of the district court. I.R.C.P. 52(a).

## I

█ Appellants first argue on appeal that the bank caused the impairment of the collateral by its actions or its omissions in failing to protect the collateral after the auction in March of 1983. Appellants argue that the bank had a duty to determine that two of the pieces of equipment did not sell, and to take steps necessary to protect the equipment from the depredations which subsequently occurred. However, the trial court found otherwise, based on the following evidence in the record. At the time that TVR held the auction on its PCA equipment, it was not in default on the loan to the bank. When the bank was contacted regarding the auction it instructed the auctioneer to contact MVE, and MVE itself determined the amount which each piece of equipment would have to bring in order to satisfy the outstanding indebtedness against it, and notified the auctioneer. MVE sent its representative to the auction, and, relying solely on hearsay of other attendees rather than meeting with the auctioneer, the representative determined erroneously that all the equipment had sold when in fact only one of the three pieces had sold. As a result, the two unsold pieces of equipment remained in the possession of the purchaser TVR. When the bank received the money from the one piece of equipment which sold, it applied the proceeds to the next annual payment due on the contract, making the contract paid up for the next eighteen months, or until November of 1984. During that ensuing period MVE was on notice regarding TVR's unstable economic condition, but took no action to preserve the collateral. When the loan finally came into default in November of 1984, the bank moved expeditiously to give notice of default to the defendants and brought this claim under the guaranty provisions. The foregoing evidence as found by the trial court amply supports its finding that the bank did not impair the collateral. That finding is supported by substantial competent evidence, and accordingly is not clearly erroneous. I.R.C.P. 52(a).

Nevertheless, as an additional reason for its decision, the district court held that the guaranty contracts signed by the appellants contained waivers against such an impairment of collateral defense, relying on our decision in *McGill v. Idaho Bank & Trust Co.*, 102 Idaho 494, 632 P.2d 683 (1981), and *Valley Bank v. Larson*, 104 Idaho 772, 663 P.2d 653 (1983). The Court of Appeals, in affirming the district court, relied solely on the waiver language of the guaranty clause, as approved in the *McGill* and *Valley Bank* cases, as the grounds for its decision, rather than the factual finding by the district court that the bank had not impaired the collateral. However, in view of the district court's finding that the bank had not impaired the collateral, which is supported by substantial evidence, there is no need to reach the issue of whether the waiver provisions of the guaranty contracts preclude the appellants from asserting the defense of impairment of collateral.

## II

█ Finally, MVE argues that the district court erred when it awarded interest

 

as accruing on the MVE/FSB contract from April of 1983. MVE argues, without citation, that it cannot be held liable for the interest until the bank actually demanded full recourse on the contracts on November 28, 1984. MVE's argument is tied to its claim of collateral impairment (discussed in Part I). MVE asserts that it "should not be charged with interest because [the bank] exercised its discretion in choosing to continue to accrue interest on the contract instead of exercising recourse at said time."

A review of the record demonstrates that in April of 1983 the bank received the proceeds from the auctioneer which amounted to $20,273.99. The bank applied this money to the simple interest loan. $2,039 of the proceeds were used to pay the interest due from the date of the last payment in November of 1982 to April 14, 1983. The remaining $18,234.99 was used to reduce the principal owed. On April 14, 1983, the amount remaining on the loan was $28,030.33. That sum was comprised solely of principal. Each day from the time the auction proceeds were applied to the loan until the trial on February 28, 1986, the simple interest loan accrued at $13.78 per day. The amount accrued totaled $14,508.11 by the time of trial.

Since we have determined that the bank did not impair the collateral, it is evident that the terms of the sales and guaranty contracts govern the accruing of interest. Both of these contracts by their specific wording entitle the bank, upon its exercise of full recourse, to collect the full balance due including principal and interest. When the bank applied the auction proceeds to the amount owed in April of 1983 it acted in conformance with the contract terms. We find no merit in MVE's claim.

The bank has requested an award of attorney fees on appeal under the terms of the guaranty agreement, and the appellants have acknowledged in their reply brief that the bank is entitled to attorney fees based on the terms of the guaranty agreements if the bank prevails. Since the bank has prevailed and, based on the agreement by the parties, we hold that the bank is entitled to reasonable attorney fees in this appeal.

Affirmed. Costs and attorney fees to respondent bank.

DONALDSON, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, C.J., concurs in result.