800 P.2d 634

VALLEY BANK, an Idaho banking corporation, Plaintiff–Respondent, Respondent on Appeal,

v.

MONARCH INVESTMENT COMPANY, Monarch Coin Company, John D. Larsen and Paul Larsen, Defendants–Appellants, Appellants on Appeal,

and

Ryan Neibaur and Vicki Neibaur, husband and wife; R & N Enterprises, and John Does One Through Ten, Defendants–Appellants.

VALLEY BANK, an Idaho banking corporation, Plaintiff–Respondent, Appellant on Appeal,

v.

MONARCH INVESTMENT COMPANY, Monarch Coin Company, John D. Larsen and Paul Larsen, Defendants–Appellants, Respondents on Appeal,

and

Ryan Neibaur and Vicki Neibaur, husband and wife; R & N Enterprises, and John Does One Through Ten, Defendants–Appellants.

VALLEY BANK, an Idaho banking corporation, Plaintiff–Respondent, Respondent on Appeal,

v.

Ryan NEIBAUR and Vicki Neibaur, husband and wife, Defendants–Appellants, Appellants on Appeal,

and

Monarch Investment Company, Monarch Coin Company, John D. Larsen, Paul Larsen, R & N Enterprises, and John Does One Through Ten, Defendants–Appellants.

Nos. 18031–18033.

Supreme Court of Idaho.

Oct. 2, 1990.

Rehearing Denied Nov. 28, 1990.

Peterson, Moss, Olsen, Meacham & Carr, Idaho Falls, for Monarch, et al. Stephen D. Hall, argued.

Imhoff & Lynch, Boise, for Neibaur, et. al. Stephen McGrath, argued.

Anderson, Pike & Bush, Idaho Falls, for Valley Bank. Scott R. Hall, argued.

JOHNSON, Justice.

This is a tale of two checks. The first check was issued by the purchasers of a stolen backhoe to the scoundrel who sold them the backhoe. The scoundrel endorsed the check without authority and cashed it at the purchasers' bank. The second check was a cashier's check issued by the bank in exchange for the first check. The second check was used by the scoundrel to buy some gold coins from a coin company.

The primary questions presented and our answers are:

1. Was the bank that cashed the first check based on the scoundrel's unauthorized indorsement entitled to charge the account of the makers of the check? No.

2. Are the makers of the first check entitled to interest and attorney fees from the bank? Yes.

3. Is the bank liable for not paying the amount of the cashier's check to the company that received it in exchange for the gold coins? Yes.

4. Is the company that received the cashier's check entitled to interest and attorney fees from the bank? Yes.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

On May 18, 1987, a man calling himself Dan Palmer telephoned Robert Jonak, a used equipment dealer in Idaho Falls. Palmer told Jonak he was an agent of a leasing company from Colorado known as Monarch Investment (Monarch Investment of Colorado). Palmer told Jonak that Monarch Investment of Colorado had recently repossessed a backhoe near Malad, Idaho, and that Monarch Investment of Colorado wished to sell the backhoe to Jonak.

Jonak contacted Ryan Neibaur and asked Neibaur to accompany Jonak to inspect the backhoe. Following the inspection on May 19, 1987, Jonak concluded that he was not interested in buying the backhoe. Neibaur indicated to Jonak that he would be interested in purchasing the backhoe.

On May 20, 1987, in a telephone call with alleged agents of Monarch Investment of Colorado, Neibaur agreed to purchase the backhoe for $6,500.00. That same day, Neibaur's wife wrote a check for $6,500.00 on an account she and her husband had at Valley Bank in Idaho Falls. The Neibaurs' check was payable to "Monarch Investment." On May 21, 1987, the Neibaurs sent the check to the "will call" counter at the Salt Lake City, Utah airport, to the attention of "Monarch Investments."

On May 22, 1987, Palmer presented the Neibaurs' check to the operations officer of the branch of Valley Bank in Pocatello, Idaho. Palmer indicated he was an agent for Monarch Investment, a leasing company in Salt Lake City, Utah, and that he had

sold the Neibaurs a repossessed backhoe. Palmer stated that his boss in Salt Lake City did not like to accept out of state personal checks and requested that the Valley Bank replace the check with a cashier's check.

The only information Palmer provided the operations officer at Valley Bank to verify that he was an agent for Monarch Investment was a telephone number. When the operations officer called this number the first time, there was no answer. There were busy signals when the operations officer called the number subsequently.

Palmer produced a driver's license bearing his name, an address in Salt Lake City, a telephone number and a social security number. The bank placed this information on the back of the Neibaurs' check, and Palmer endorsed the check:

Monarch Investment

By Dan Palmer, Agent.

/s/ Dan Palmer

Valley Bank then issued and delivered to Palmer a cashier's check for $6,500.00, payable to "Monarch Investment." This cashier's check also had Neibaur's name typed in the lower left-hand corner. At the time Valley Bank issued the cashier's check, the bank charged the Neibaurs' account $6,500.00.

Later that same day, an unidentified individual entered a business operated by Monarch Coin Corporation (Monarch Coin) in Salt Lake City, Utah. Monarch Coin is also known as Monarch Investment. This individual asked to purchase $6,500.00 worth of gold coins and presented the cashier's check as payment. Pursuant to the usual practice of Monarch Coin, one of its employees telephoned Valley Bank in Pocatello and spoke to the operations officer. The operations officer informed Monarch Coin's employee that Valley Bank had issued the cashier's check that morning, that the signature on the cashier's check was authorized and that the bank had no notice that the check had been stolen.

At the trial of this case, the operations officer testified that she made it clear to the employee of Monarch Coin in this conversation that the cashier's check had been issued for the payment of a backhoe that was purchased by the Neibaurs. The employee of Monarch Coin who had called Valley Bank about the cashier's check testified at trial that in this conversation the operations officer of the bank asked, "is this for payment of the backhoe?" The Monarch Coin employee testified that she replied, "no, ... I'm a coin company and I am calling on that." The Monarch Coin employee testified this was all that was said about a backhoe.

Monarch Coin then delivered the gold coins to Palmer in exchange for the cashier's check. The vice president of Monarch Coin endorsed the cashier's check with the words "Monarch Investment" and stamped the check for deposit to the bank where Monarch Coin had its account.

On May 23, 1987, Neibaur obtained possession of the backhoe. Neibaur was to receive a bill of sale by the next day. May 24, 1987, was a Sunday, and the following day was Memorial Day. When Neibaur did not receive a bill of sale by May 26, 1987, Neibaur unsuccessfully attempted to locate and contact Monarch Investment of Colorado and then directed Valley Bank to stop payment on the Neibaurs' check.

On May 28, 1987, Valley Bank received the cashier's check for payment. Valley Bank returned the check because the endorsement was irregular. On June 3, 1987, the vice president of Monarch Coin signed the cashier's check with his name as the one endorsing the cashier's check for Monarch Investment and redeposited the check. On or about June 15, 1987, the cashier's check was dishonored by Valley Bank based on the Neibaurs' stop payment order.

Palmer was not an agent of either Monarch Investment of Colorado or Monarch Coin. The Neibaurs subsequently learned that the backhoe had been stolen and returned it to its owner.

Valley Bank filed an interpleader action alleging that the bank had received a demand from Monarch Coin to pay the cash-

ier's check and a demand from the Neibaurs to stop payment on the cashier's check. Valley Bank deposited $6,500.00 with the clerk of the trial court, which the bank said represented the sums held by it from the cashier's check and from the Neibaurs' check. Valley Bank portrayed itself as an innocent stakeholder and requested the trial court to enter an order releasing and discharging the bank from all liability to Monarch Coin and the Neibaurs on account of the cashier's check and the Neibaurs' check.

Monarch Coin counterclaimed, requesting payment of the $6,500.00 represented by the cashier's check, together with interest and attorney fees. The Neibaurs counterclaimed, requesting the $6,500.00 represented by their check, together with interest and attorney fees.

Following a court trial in the magistrate's division of the district court, the magistrate ruled that Monarch Coin was a holder in due course of the cashier's check and was entitled to receive $6,500.00, plus interest, from Valley Bank. The magistrate also ruled that Palmer's endorsement of the Neibaurs' check was unauthorized, that Valley Bank was negligent in failing to determine Palmer's authority to cash the check, and that the Neibaurs were entitled to receive $6,500.00 from Valley Bank. magistrate denied interest to the Neibaurs and denied attorney fees to both Monarch Coin and the Neibaurs. Each party appealed the portion of the magistrate's decision that was adverse.

On appeal, the district judge affirmed the magistrate's award of $6,500.00, plus interest, to Monarch Coin, but ruled that the magistrate should have awarded attorney fees to Monarch Coin. However, the district judge concluded that Monarch Coin should have taken action to mitigate the accrual of interest by requesting that the $6,500.00 deposited with the clerk of the trial court be placed in an interest-bearing account. The district judge directed the magistrate to reduce the interest payable to Monarch Coin appropriately.

The district judge also ruled that Valley Bank was not negligent in accepting Palm-

er's endorsement of the Neibaurs' check, reversed the magistrate's award to the Neibaurs and directed the magistrate to award attorney fees to Valley Bank against the Neibaurs. The district judge denied attorney fees on appeal to both Monarch Coin and Valley Bank. Each party appealed the portion of the district judge's decision that was adverse.

II.

VALLEY BANK SHOULD NOT HAVE CHARGED NEIBAURS' ACCOUNT FOR THE CHECK INDORSED BY PALMER.

 The Neibaurs assert that Valley Bank should not have allowed Palmer to cash the check they made payable to Monarch Investment, because Palmer did not have authority to endorse the check for Monarch Investment of Colorado. We agree.

The first premise for our analysis of this issue is that Monarch Investment of Colorado was the intended payee of the Neibaurs' check. We base this premise on the findings of the magistrate, which were based primarily on a stipulation of the parties.

The magistrate found that in offering to sell the backhoe, Palmer represented that he was an agent of Monarch Investment of Colorado. The magistrate also found that after Neibaur did not receive a bill of sale to the backhoe, he attempted to locate and contact Monarch Investment of Colorado. In her decision in favor of the Neibaurs, the magistrate focused on the fact that Palmer was not an agent for Monarch Investment of Colorado. The magistrate concluded that Valley Bank was negligent in failing to ascertain Palmer's authority to cash the Neibaurs' check. This conclusion implicitly indicates that the magistrate found that when the Neibaurs made their check payable to "Monarch Investment," they intended it to be paid to Monarch Investment of Colorado.

Because Palmer was not an agent of Monarch Investment of Colorado, his indorsement of the check was unauthorized

and was inoperative as that of the payee of the check. I.C. § 28–1–201(43) (" 'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery."); I.C. § 28–3–404(1) ("Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; . . . .").

Valley Bank argues that Palmer's indorsement was effective because he was an imposter. We are unable to accept this argument. I.C. § 28–3–405(1)(a) provides:

An indorsement by any person in the name of a named payee is effective if
(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; . . . .

The comment to the official text of the portion of the Uniform Commercial Code (the UCC) from which I.C. § 28–3–405(1)(a) was taken states in part:

"Imposter" refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement.

Comment to Official Text of U.C.C. § 3–405 comment 2.

Palmer did not impersonate anyone. He merely represented that he was the authorized agent of Monarch Investment of Colorado. The Neibaurs were entitled to have the indorsement of Monarch Investment of Colorado before the check was charged against their account.

I.C. § 28–4–401(1) provides: "As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account. . . ." Pursuant to this section, a check with a forged indorsement is not properly payable by a bank from its customer's account.

The general rule in states that have adopted § 4–401 of the UCC is that between a bank and its customer, the bank must bear losses resulting from payment of a customer's check based on a forged indorsement. *E.g., Sony Corp. of America v. American Express Co.,* 115 Misc.2d 1060, 455 N.Y.S.2d 227 (N.Y.City Civ.Ct. 1982). The application of this rule in Idaho is supported by a decision of this Court before the UCC was adopted in Idaho. In *Uriola v. Twin Falls Bank & Trust Co.,* 37 Idaho 332, 337, 215 P. 1080, 1085 (1923) (quoting *Land Title & Trust Co. v. Northwestern Nat'l Bank,* 196 Pa. 230, 46 A. 420, 421 (1900)), the Court stated that " 'when a bank pays a depositor's check on a forged indorsement, . . . it is held to have paid it out of its own funds, and cannot charge the payment to the depositor's account. . . .' "

Valley Bank was not entitled to charge the Neibaurs' account for the check that Palmer indorsed as agent of Monarch Investment of Colorado. The Neibaurs are entitled to judgment against Valley Bank for $6,500.00, plus interest from the date Valley Bank charged their account. I.C. § 28–22–104(2).

The deposit of $6,500.00 by Valley Bank with the clerk of the district court in conjunction with Valley Bank's interpleader action does not affect this award of interest. Valley Bank argues that the Neibaurs and Monarch Coin should have requested the clerk to deposit the $6,500.00 in an interest-bearing account. This misconstrues the nature of the claims by the Neibaurs and Monarch Coin against Valley Bank.

The Neibaurs and Monarch Coin were not disputing with Valley Bank over the same $6,500.00. The Neibaurs claimed that Valley Bank was liable to them because of Valley Bank's charge against the Neibaurs' account based on Palmer's unauthorized indorsement of the Neibaurs' check. Monarch Coin's claim against Valley Bank was based on Valley Bank's failure to honor Valley Bank's cashier's check. Valley Bank was not an innocent stakeholder and may not avoid prejudgment interest.

The Neibaurs are also entitled to attorney fees incurred in the proceedings before the magistrate, on appeal to the district

752

judge, and on appeal to this Court. I.C. § 12–120(3); *Robinson v. Joint School Dist. No. 331*, 105 Idaho 487, 492, 670 P.2d 894, 895 (1983).

### III.

### THE FINDINGS IN SUPPORT OF THE MAGISTRATE'S CONCLUSION THAT MONARCH COIN WAS A HOLDER IN DUE COURSE OF THE CASHIER'S CHECK WERE NOT CLEARLY ERRONEOUS.

■ Valley Bank asserts that Monarch Coin was not a holder in due course of the cashier's check. We conclude that there was substantial and competent evidence to support the findings that led to the magistrate's conclusion that Monarch Coin was a holder in due course.

I.C. § 28–3–302 provides:

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

(2) A payee may be a holder in due course.

. . . .

Here, the magistrate found that an employee of Monarch Coin telephoned Valley Bank to verify the authenticity of the cashier's check and received information from Valley Bank that the check was valid and not known to be stolen. Monarch Coin then accepted the check in exchange for gold coins. The magistrate ruled that nothing in this transaction was of such a suspicious nature as to prevent Monarch Coin from being a holder in due course.

The testimony of the operations officer of Valley Bank conflicts with the testimony of the employee of Monarch Coin concerning what was said in the telephone conversation about the purpose of the cashier's check. The operations officer of Valley Bank testified that she made it clear to the employee of Monarch Coin that the cashier's check had been issued in payment for

a backhoe that had been purchased by the Neibaurs. Taken alone this testimony would support the conclusion that Monarch Coin was put on notice that the cashier's check was issued to pay for a backhoe and should have been accepted only for that purpose. If this were the only testimony presented to the magistrate on this issue, it would be difficult to sustain the ruling of the magistrate that Monarch Coin was a holder in due course.

However, the employee of Monarch Coin testified that the only thing said about a backhoe in the telephone conversation was a question by the operations officer of Valley Bank whether the check was being used in payment for a backhoe. The testimony of the employee of Monarch Coin contradicted the testimony of the operations officer of Valley Bank, who said she told the Monarch Coin employee that the check was in payment for a backhoe. The magistrate ruled that the conversation between these two was not enough to put Monarch Coin on notice that it should not accept the cashier's check in payment for the gold coins.

Whether Monarch Coin was acting in good faith or had notice of a defense against or a claim to the cashier's check is a question of fact. *Cf. Winter v. Nobs*, 19 Idaho 18, 112 P. 525 (1910); *Winter v. Hutchins*, 20 Idaho 749, 119 P. 883 (1911). We will not disturb the magistrate's findings on this issue, because the findings are supported by substantial, though conflicting, evidence and are therefore not clearly erroneous. I.R.C.P. 52(a); *First Sec. Bank v. Mountain View Equip.*, 112 Idaho 1078, 1079, 739 P.2d 377, 378 (1987).

■ We also reject Valley Bank's argument that the stop payment order of the Neibaurs on their check to Monarch Investment of Colorado allowed Valley Bank to stop payment of the cashier's check. The cashier's check was an obligation of Valley Bank, not of the Neibaurs. The stop payment order had no effect on the obligation of Valley Bank to pay the cashier's check.

Monarch Coin is entitled to judgment for the amount of the cashier's check, plus

interest and attorney fees incurred in the proceedings before the magistrate, on appeal to the district judge, and on appeal to this Court. I.C. § 28-3-510A.

## IV.

### CONCLUSION.

The judgment of the magistrate awarding the Neibaurs $6,500.00 is reinstated. We remand the case to the magistrate and direct the magistrate to award to the Neibaurs prejudgment interest on the $6,500.00 from the date the check was charged to the account of the Neibaurs. We also direct the magistrate to award the Neibaurs attorney fees incurred by them in the proceedings before the magistrate and on appeal to the district judge.

The judgment of the magistrate awarding Monarch Coin $6,500.00 together with prejudgment interest is affirmed. The decision of the district judge awarding attorney fees to Monarch Coin incurred in the proceedings before the magistrate is also affirmed. We remand the case to the magistrate and direct the magistrate to award attorney fees incurred by Monarch Coin on appeal to the district judge.

We award costs and attorney fees on appeal to the Neibaurs and Monarch Coin against Valley Bank.

McDEVITT, J., and WOODLAND, J. Pro Tem., concur.

BOYLE, J., sat, but did not participate.

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur in this Court's upholding the judgment in favor of Monarch Investment against Valley Bank. However, as to the claim of the Neibaurs against Valley Bank, the man Palmer, who represented to the Neibaurs that he was an agent of Monarch Investment of Colorado, was actually "an imposter" to the extent that he claimed to be a representative of a Colorado business which actually held that name. Palmer appeared on the scene, impersonating both Monarch Investment of Colorado, and him-self as its agent. Neibaurs could have best prevented the fraud by knowing both the principal and the agent with whom they were dealing, and being certain that the alleged principal (Monarch Investment of Colorado) owned the backhoe which they were about to purchase. As between the Neibaurs and Valley Bank, the Neibaurs were in a much better position to have prevented the loss from ever occurring by knowing who they were dealing with, and knowing whether or not the backhoe which they were about to purchase was the property of Monarch Investment of Colorado. As between those two "victims" of Palmer's fraud, I believe the loss should fall on Neibaurs. The district court was correct in so ruling, and I would affirm the district court.