[No. H011620. Sixth Dist. Aug. 17, 1994.]

TITLE INSURANCE COMPANY OF MINNESOTA, Plaintiff and
Appellant, v.
COMERICA BANK — CALIFORNIA, Defendant and Respondent.

## COUNSEL

Mount & Stoelker and James M. Ingram for Plaintiff and Appellant.

Ware & Freidenrich, Peter M. Rehon, Lisa C. Roberts and Shannon F. Fallon for Defendant and Respondent.

## OPINION

**MIHARA, J.**—At issue in this appeal is the applicability and scope of the "impostor rule," which makes an indorsed check effective if the drawer was induced to issue the check by an impersonator of the payee. (Cal. U. Com. Code, § 3404, subd. (a); Cal. U. Com. Code, former § 3405, subd. (1)(a).) Plaintiff Title Insurance Company of Minnesota contends the trial court erroneously applied this rule in sustaining the demurrer of the drawee bank, respondent Comerica Bank — California (Bank), to plaintiff's complaint for negligence. We agree that the impostor rule is not applicable under the circumstances presented, and accordingly reverse the judgment of dismissal.

### Allegations of the Complaint

A general demurrer presents the same question to the appellate court as to the trial court—namely, whether the plaintiff has alleged sufficient facts in the complaint to justify relief on any legal theory. (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 953 [230 Cal.Rptr. 192]; *Shahvar* v. *Superior Court* (1994) 25 Cal.App.4th 653 [30 Cal.Rptr.2d 597].) Accordingly, in reviewing an order sustaining a demurrer, we assume the truth of all material facts properly pleaded in the complaint and determine whether it states any valid claim entitling the plaintiff to relief. (*B & P Development Corp.* v. *City of Saratoga, supra*, 185 Cal.App.3d at p. 953; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) In light of this established principle of review, we summarize the facts as alleged in plaintiff's first amended complaint.

Plaintiff is the assignee of the interests of First National Mortgage Company (FNMC), who made two equity loans to Helen Nastor (Helen), secured by deeds of trust. Plaintiff issued a policy of land title insurance for each of these loans.

On September 22, 1988, FNMC issued a check payable to Helen in the amount of $58,659.29, the proceeds of the first loan. FNMC gave the check to Helen's son, Rudy Nastor (Rudy), for delivery to Helen. That day,

someone impersonating Helen indorsed the check and presented it to Bank, where FNMC held an account. Bank paid the impersonator the full amount of the check.

On December 29, 1988, FNMC made a second loan to Helen in the amount of $108,300. Part of the proceeds of this loan were used to pay off the first loan. The remainder was issued to Rudy in the form of a check made payable to him.

When FNMC failed to receive payment on the $108,300 loan, it initiated nonjudicial foreclosure proceedings against Helen's property. On October 17, 1989, Helen's attorney informed FNMC that its deed of trust on the property was invalid because it had been executed by Rudy using a forged power of attorney. Helen thereafter testified by deposition that she had not executed the power of attorney, nor had she indorsed or presented the check to Bank for payment.

FNMC made a claim for payment under the second title insurance policy, and plaintiff paid FNMC $108,300. Plaintiff, acting as subrogee and assignee with respect to FNMC's claim, then sued Bank for negligence, seeking recovery of the $108,300. According to the first amended complaint, Bank had a duty "to establish and practice such procedures and business practices as are or may be reasonably necessary and effective to avoid a breach of any of the duties of care owed by BANK . . . to the depositors and customers of BANK . . . including therein a duty to immediately inform customers such as FNMC when impostors and/or forgers attempt to cash a check drawn on such customers' accounts with BANK." Bank breached this duty, plaintiff alleged, by failing to ensure "that only properly endorsed and presented checks of its depositors [were] paid." Had Bank "caught" the impostor trying to cash the check payable to Helen, it would have informed FNMC of the attempt, and FNMC would have discovered the forged power of attorney before it made the second loan.

### Applicability of the Impostor Rule

Bank's demurrer is based entirely on the asserted applicability of the impostor rule, which, according to Bank, interposes an "absolute defense" against plaintiff's allegations of negligence. Bank relies on the current provisions of California Uniform Commercial Code section 3404, subdivision (a) (hereafter, section 3404(a)), which makes an indorsement by any person effective if an impostor had induced the issuance of the instrument to

either the impostor or "a person acting in concert with the impostor."[1] In this case, argues Bank, Rudy was acting in concert with the impostor (the impersonator of Helen), who presented the check to Bank for payment.

Plaintiff responds that section 3404(a) is not applicable, because it was not enacted until 1992, after the events alleged in the complaint. Instead, plaintiff maintains, this case is controlled by California Uniform Commercial Code former section 3405, subdivision (1)(a) (hereafter, former section 3405(1)(a)). The expression of the rule in the latter statute is substantially the same as that of the current provisions, but excluded from its reach are false representations of agency. Because Rudy obtained the check from FNMC by falsely representing that he was authorized to act as Helen's agent, plaintiff argues the transaction at issue is outside the scope of the impostor rule.

We agree with plaintiff that former section 3405(1)(a) governs the disposition of this case, since the events at issue took place in 1988, while that statute was still in effect.[2] Former section 3405(1)(a) provided: "An indorsement by any person in the name of a named payee is effective if (a) An impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee. . . ."

This section does not protect Bank from liability under the circumstances presented. ■ As one California court explained prior to the enactment of California Uniform Commercial Code former section 3405, the impostor rule is applicable only when the issuance of the check has been accomplished through *impersonation* of the payee: "[W]here a check is delivered to an impostor as payee and the drawer believes that the impostor is the person upon whose endorsement it will be paid, the endorsement by such impostor in the name which he is using to impersonate another is not a forgery. . . . The soundness of the rule obtains in the fact that the money has actually been paid to the person for whom it was really intended. Because another person might bear the very name assumed by the impostor and might have

---

[1]Section 3404(a) states: "If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection."

[2]There is no basis for Bank's assumption that the current provisions, added in 1992, were intended to operate retroactively. A statute affecting substantive rights and obligations should be given prospective effect absent a clear indication that the Legislature intended otherwise. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com* (1947) 30 Cal.2d 388, 393 [182 P.2d 159]; *In re Marriage of Reuling* (1994) 23 Cal.App.4th 1428, 1439 [28 Cal.Rptr.2d 726].)

some contractual relationships with the impostor does not subject to a loss the drawee bank when it has paid the check to the person intended as the payee." (*Schweitzer* v. *Bank of America* (1941) 42 Cal.App.2d 536, 540 [109 P.2d 441]. See also *Security-First Nat. Bank* v. *United States* (9th Cir. 1939) 103 F.2d 188, 190; *Ryan* v. *Bank of Italy Nat. T. & S. Assn.* (1930) 106 Cal.App. 690, 695 ]289 P. 863].)

The reasoning of the *Schweitzer* court directs our analysis in the present case. If FNMC (the drawer) had been induced *by an impostor* of Helen to issue the check either to Rudy or to the impostor, then the indorsement would be considered effective as to FNMC under the impostor rule. The rationale for this result is that Bank has paid the person whom FNMC intended to receive the money. When viewed under principles of negligence or estoppel, the outcome of this scenario would be the same: the risk of loss would be shifted to the drawer of the instrument (FNMC), which was in a better position to detect the fraud. (See *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 830 [149 Cal.Rptr. 883] [burden of loss on party who deals with the forger]; *Intelogic* v. *Merchants Nat. Bank* (Ind.App. 1993) 626 N.E.2d 839, 842 [under Uniform Commerical Code, loss resulting from forged indorsement should fall upon party best able to prevent it]; *East Gadsden Bank* v. *First City Nat. Bank of Gadsden* (1973) 50 Ala.App. 576 [281 So.2d 431, 433, 67 A.L.R.3d 135] [intended payee theory distinguished from negligence or estoppel theory].)

■ This case presents different facts, however. Here, FNMC made the check payable to the true Helen, not to an impostor representing herself as Helen. FNMC intended that Helen herself—not a person it believed to be Helen—indorse the check and receive the proceeds. There is no question that FNMC intended to deal solely with Helen. The rationale underlying the protection of the impostor rule thus does not apply here. (Cf. *East Gadsden Bank* v. *First City Nat. Bank of Gadsden, supra*, 281 So.2d at p. 434.)

A person's false representation that he or she is an agent of the payee is not sufficient. California Uniform Commercial Code comment 2 to former section 3405 notes: " 'Impostor' refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement." (See com., 23B West's Ann. Cal. U. Com. Code, § 3405 (1964 ed.) p. 287.) Here, Rudy obtained issuance of the check to Helen not by impersonating her, but by falsely representing that he was authorized to act on her behalf. Although clearly fraudulent, this conduct does not constitute impersonation and thus cannot be considered an inducement to issue the instrument within the

meaning of former section 3405(1)(a). (Cf. *Broward Bank* v. *Commercial Bank* (Fla.Ct.App. 1989) 547 So.2d 687, 689; *Valley Bank* v. *Monarch Inv. Co.* (1990) 118 Idaho 747 [800 P.2d 634, 637-638]; *W.R. Grimshaw Co.* v. *First Nat. Bank & Tr. Co. of Tulsa* (Okla. 1977) 563 P.2d 117, 122; *Valley Bank & Trust* v. *Zions First Nat. Bank* (Utah 1982) 656 P.2d 425, 427.)

Bank's emphasis on the asserted fact that Rudy was acting in concert with Helen's impostor is of no consequence. To invoke the protection of former section 3405(1)(a) Bank would have to point to facts showing that *by impersonation* the impostor induced FNMC to issue the check either to her or to Rudy, her confederate. The complaint alleges no such facts, however. The only impersonation that took place was in the presentation of the check to Bank.

Some courts have found impersonation where the payee's signature is forged on the very documents required to obtain the money. In *Minster State Bank* v. *BayBank Middlesex* (1993) 414 Mass. 831 [611 N.E.2d 200, 202], for example, the husband engaged in imposture "by the use of mails or otherwise" by forging his wife's name to a promissory note. (Contra, *Broward Bank* v. *Commercial Bank of Hollywood, supra,* 547 So.2d 687, 689.) *Fidelity & D. Co. of Md.* v. *Manufacturers Han. Tr. Co.* (1970) 63 Misc.2d 960 [313 N.Y.S.2d 823] involved a forgery of a depositor's signature on a withdrawal order, resulting in the issuance of two checks against the depositor's account. Similarly, the court in *Intelogic* v. *Merchants Nat. Bank, supra,* 626 N.E.2d 839, 846, considered whether the forgery of a payee's signature directly induced the drawer to issue checks under a purported lease-back agreement.

In the case before us, however, there is no allegation that Rudy forged Helen's signature on the loan documents themselves. Instead, Rudy forged Helen's signature on a power of attorney, which enabled him only to represent himself as Helen's agent. Thereafter, he used that agency status to obtain the loan from FNMC, ostensibly on Helen's behalf. Thus, even assuming that forgery of a payee's signature on loan documents constitutes an imposture, that scenario did not occur here. Rudy's act of forgery was not an impersonation but only a misrepresentation of his authority to do business on behalf of Helen.

The result is no different even under section 3404(a), the current version of the rule. The only significant change in this section is its recognition that the impostor may pretend to be either the payee or the payee's agent. As the California Uniform Commercial Code comment to the revised law notes, "Under former Section 3-405(1)(a), if Impostor impersonated Smith and induced the drawer to draw a check to the order of Smith, Impostor could

negotiate the check. If Impostor impersonated Smith, the president of Smith Corporation, and the check was payable to the order of Smith Corporation, the section did not apply. . . . Section 3-404(a) gives Impostor the power to negotiate the check in both cases." (See com., 23B West's Ann. Cal. U. Com. Code, § 3403 (1964 pocket supp.) p. 60.) This comment makes it clear that impersonation is still required to invoke the impostor rule, whether the perpetrator of the deception pretends to be the principal or the agent. Misrepresentation of the perpetrator's agency status does not suffice. (See *Intelogic* v. *Merchants Nat. Bank, supra,* 626 N.E.2d at p. 845.)

We must conclude, therefore, that the impostor rule is inapplicable under these circumstances. By correctly identifying himself as Rudy but falsely representing himself to be Helen's agent Rudy did not engage in the impersonation required by the impostor rule, as expressed both in former section 3405, which was applicable at the time of the transactions at issue, and in its contemporary form, section 3404(a). The impersonation by Helen's impostor cannot be said to have induced FNMC to issue the check, since it took place only afterward, when the impostor presented the check to Bank.

Bank does not challenge the legal sufficiency of the complaint in any respect other than the asserted bar of the impostor rule.[3] Accordingly, we hold that the trial court incorrectly sustained Bank's demurrer based on the application of the impostor rule.

This conclusion, however, should not be construed as a comment on the merits of the complaint. A demurrer tests "only the legal sufficiency of the complaint, not the truth of its factual allegations or the plaintiff's ability to prove those allegations." (*Yue* v. *City of Auburn* (1992) 3 Cal.App.4th 751, 757 [4 Cal.Rptr. 2d 653]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Thus, we express no opinion whatsoever as to whether plaintiff can prove all the elements of negligence, whether it will be able to withstand any affirmative defenses that may be asserted by Bank in its answer, or whether it could successfully resist a motion for summary judgment. (See generally, *Basch* v. *Bank of America* (1943) 22 Cal.2d 316, 321-323 [139 P.2d 1]; *E.F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d 60, 67-68 [196 Cal.Rptr. 614]; *Sehremelis* v. *Farmers & Merchants Bank* (1992) 6 Cal.App.4th 767, 774-776 [7 Cal.Rptr.2d 903]; see also Cal. U. Com. Code, former § 3406.)

---

[3]Plaintiff cites *Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920] and *Joffe* v. *United California Bank* (1983) 141 Cal.App.3d 541 [190 Cal.Rptr. 443] to support its cause of action for negligence. Bank seeks to distinguish these cases on their facts and argues that they contravene the application of the impostor rule. In light of our holding that the impostor rule is inapplicable, the parties' dispute on this issue is moot.

## Disposition

The judgment of dismissal is reversed. The trial court shall enter a new order overruling the demurrer to the first amended complaint and directing Bank to answer. Plaintiff is entitled to costs on appeal.

Premo, Acting P. J., and Wunderlich, J., concurred.