Filed 7/20/21  Keeling v. Howroyd-Wright Employment Agency CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| KAREN KEELING, | B301851 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC723763) |
| v. | |
| HOWROYD-WRIGHT EMPLOYMENT AGENCY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

The Community Law Group, Mark S. Smith for Plaintiff and Appellant.

K.P. Roberts & Associates, Kenneth P. Roberts, Ryan P. Tish and Kevin Y. Kanooni for Defendant and Respondent.

## INTRODUCTION

During discovery for a prior employment discrimination lawsuit, plaintiff Karen Keeling learned of "sham" documents purportedly showing compensation owed to her but never paid. She sued her employer, defendant Howroyd-Wright Employment Agency, Inc., for fraud, failure to provide accurate wage statements, and unfair business practices under California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).[1]  The trial court sustained a series of demurrers filed by Howroyd, ultimately dismissing all of Keeling's claims without leave to amend.  On appeal, Keeling argues that she properly pled a claim for violations of the UCL or, alternatively, any deficiencies in the claim could be cured by amendment.  We find no error and therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

### I.  Keeling's Pleadings

Keeling filed her complaint against Howroyd in October 2018, alleging nonpayment of wages.  Howroyd demurred, the court sustained the demurrer with leave to amend, and Keeling filed a first amended complaint (FAC), alleging claims for fraud, negligent misrepresentation, negligence, and failure to provide an accurate wage statement.  Howroyd demurred again, and the court sustained the demurrer without leave to amend her claims, but granted Keeling leave to amend to allege a new cause of action under the UCL.

Keeling filed the second amended complaint (SAC)—the pleading at issue here—on June 26, 2019.  She alleged a cause of action for unfair and deceptive business practices under the UCL,

---

[1]All further statutory references are to the Business and Professions Code unless otherwise indicated.

and realleged claims for fraud and failure to provide accurate wage statements. The following facts are taken from the allegations of the SAC.

Keeling was hired by Howroyd as an office coordinator in May 1999. After three years, she was "given the duties of an Account Executive, and ultimately promoted to Senior Account Executive." She remained an active employee until she took disability leave in May 2014 for "stress and carpal tunnel syndrome." Keeling's initial salary was $2,080 per month; as of May 2014, "her salary had increased to $3,700 per month."

Keeling filed her first lawsuit against Howroyd in December 2015, alleging workplace discrimination, harassment, and retaliation. During her 2017 deposition for that lawsuit, she "was asked whether she acknowledged receiving certain raises to her salary and commission based on performance or promotions." During this questioning, Keeling was shown a series of documents for the first time called Performance Standard Change Forms (PSCs). These PSCs "reflected raises that Plaintiff was unaware of." Specifically, Keeling alleged the existence of four PSCs, dated between 2004 and 2012, reflecting raises to Keeling's salary and an "increased commission structure for recruiting permanent employees." The ending salary reflected on the latest newly-discovered PSC was $3,333.33.

According to Keeling, "[p]rior to receiving any raise, a PSC must be presented to both the employee and his or her immediate supervisor for review, signing, and dating." The PSCs at issue, however, contained signatures by Howroyd managers, but no signatures by Keeling or her supervisor. Keeling further alleged that she "never received the money that she earned according to the PSCs," including commissions she purportedly earned. She

3

first learned of the existence of these PSCs at her 2017 deposition.

Keeling retained a financial expert who "conducted a forensic examination of Plaintiff and Defendants' employment compensation records and the PSCs." Based on these records, which included Keeling's W-2s, check stubs, and reported Social Security wage records, the expert determined that Keeling "was shorted at least $58,000.00 in unpaid employment compensation." In addition, Keeling's investigation determined that Howroyd was "creating these fake PSCs to generate more funds in their coffers to pay supervisors and managers performance and tenure bonuses. This process was given the internal name of 'Transaction 27.'"

In her UCL claim, Keeling alleged that Howroyd engaged in "unlawful, unfair, fraudulent, misleading, untrue or deceptive business acts or practices designed to induce Plaintiff to continue as an employee of Defendant, while depriving her of her proportionate share of salary and commissions as documented on the PSCs, while Plaintiff's salary and commissions were being redirected to pay supervisors and managers performance and tenure bonuses under the internal name of 'Transaction 27.'" She claimed that she suffered damages of $58,000 as a result of Howroyd's "unfair and deceptive business practices."

## II. Demurrer to the SAC

Howroyd demurred to the SAC. It argued that Keeling failed to state facts to support any cause of action. (See Code Civ. Proc. § 430.10, subd. (e).) Specifically, Howroyd contended that Keeling could not bring a UCL cause of action based on a claim for unpaid compensation, because she "admitted she was not entitled" to any unpaid wages when she alleged that the PSCs

4

were a sham. Howroyd also noted that the court previously sustained the demurrer to the second and third causes of action without leave to amend, and argued that Keeling could not predicate her UCL claim on these invalid causes of action. Howroyd also urged the court to deny further leave to amend, arguing that Keeling had repeatedly amended her complaint by alleging the same facts, despite the trial court's finding that she had failed to show she was entitled to any unpaid compensation.

Keeling opposed the demurrer, arguing that she had adequately alleged unfair and fraudulent practices under the UCL and that her claim was sufficient "even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." She also stated that she had realleged the other two claims because the UCL "requires a legal basis for its usage." She requested leave to amend if the court sustained the demurrer, but did not state how she would amend the complaint to cure any defects.

In her accompanying declaration, Keeling stated that Howroyd used these PSCs "four times to siphon money that should have been given to me had I seen the PSC's and signed them. These PSC's were instead used to compensate and provide[ ] bonuses to managers of [Howroyd]. While all the while attributed to me in the Defendant's books although I never received it!" She also acknowledged that she testified in her deposition for the prior lawsuit that "I didn't get the money indicated on the fraudulent PSCs and that I was not entitled to it, however, this was before I discovered Defendant's unfair business practices." She stated that if she had she "known then what I subsequently found out [from her expert's audit], my response would have been totally different." Keeling attached

5

excerpts from her deposition transcript and several PSCs as exhibits.[2]

## III. Hearing and Ruling on Demurrer

At the demurrer hearing on September 18, 2019, the court indicated it was tentatively inclined to sustain the demurrer as to the remaining UCL claim, because Keeling was "bootstrapping" her claim to her other causes of action, but "the analysis is going to be the same," and Keeling had "no viable theory at this point for 17200." The court observed to Keeling's counsel that "if you could allege that [Howroyd] did not give her money to which she is entitled or they stole it from her and paid themselves healthier bonuses, if you could allege that and/or prove it, you could also have a cause of action for 17200." But the court found that Keeling's allegations failed to support any right to the money listed on the PSCs.

In its written ruling, the court sustained the demurrer as to all causes of action without leave to amend. First, the court addressed the two non-UCL causes of action Keeling had realleged. The court noted that it had previously sustained the demurrer to the FAC *without* leave to amend as to both the fraud and wage statement claims, only granting plaintiff leave to allege a new cause of action under the UCL. The court reaffirmed its dismissal of the fraud and wage statements claims, citing Keeling's continued allegations that the PSCs were invalid because they were never presented to her or signed. Thus, because Keeling "has not alleged the existence of any valid PSC

---

[2]Neither party requested judicial notice of these exhibits and the trial court expressly declined to consider them in ruling on the demurrer. We likewise decline to consider Keeling's declaration or attached exhibits for the purposes of this appeal.

showing that she was entitled to additional compensation," she "cannot allege damages flowing from concealing invalid PSCs from her."

Turning to the UCL cause of action, the court found that Keeling was "attempting to 'borrow' the law governing fraud and failure to provide accurate wage statements as the basis for her § 17200 claim. . . . Where a plaintiff cannot state a claim under the 'borrowed' law, however, she cannot state a UCL claim either." Thus, because Keeling "has not shown that she can successfully allege a violation of law" by Howroyd, "she cannot successfully allege a violation of § 17200." The court denied leave to amend, finding that the SAC "does not contain allegations that suggest Plaintiff would be able to successfully amend this cause of action."

The court entered judgment in favor of Howroyd on October 21, 2019. Keeling timely appealed.

## DISCUSSION

On appeal, Keeling challenges only the court's dismissal of her UCL claim, contending that she adequately alleged a claim for relief under the UCL. She further argues that even if the claim was deficient, the trial court erred in denying her leave to amend to cure those deficiencies. We find no error in either respect.

## I.    Legal Standards

A demurrer tests the legal sufficiency of factual allegations in a complaint. (*Title Ins. Co. v. Comerica Bank–California* (1994) 27 Cal.App.4th 800, 807; Code Civ. Proc. § 430.10, subd. (e).) We review de novo the dismissal of a civil action after a demurrer is sustained without leave to amend. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 (*Cantu*).)

7

In doing so, "we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'" (*Ibid.*) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid.*)

On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) To establish that a cause of action has been adequately pled, a plaintiff must demonstrate he or she has alleged "facts sufficient to establish every element of that cause of action. [Citation.]" (*Cantu, supra*, 4 Cal.App.4th at pp. 879–880.) If the complaint fails to plead any essential element of a cause of action, this court should affirm the sustaining of a demurrer. (*Ibid.*)

We review an order denying leave to amend for an abuse of discretion. It is an abuse of discretion to sustain a demurrer without leave to amend if there is "a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) "However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. Plaintiff must show in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading.'" (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; see also *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

## II. Sufficiency of the UCL Claim

Keeling contends that she adequately alleged a claim for

relief under the UCL, based on Howroyd's "unlawful, fraudulent, and/or deceptive business practices." Howroyd responds that Keeling lacks standing to bring a UCL claim because she did not allege any injury or damages she suffered as a result of Howroyd's alleged misconduct. We agree that Keeling has not adequately alleged standing under the UCL.

The UCL prohibits "unfair competition," including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (§ 17200.) "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949; see also *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).)

The UCL previously authorized "any person acting for the interests of . . . the general public" to sue for relief for unfair competition, notwithstanding lack of injury or damages. (Former § 17204; see also *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 (*Mervyn's*).) Proposition 64, approved by the voters in 2004, amended section 17204 and "changed the standing requirements for a UCL claim to create a two-pronged test: A private person now has standing to assert a UCL claim only if he or she (1) 'has suffered injury in fact,' and (2) 'has lost money or property as a result of such unfair competition.'" (*Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 852, citing § 17204; see also *Mervyn's, supra*, 39 Cal.4th at p. 227-228.) Thus, "[t]o satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury

9

was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset, supra,* 51 Cal.4th at p. 322 (emphasis in original).)

In her opening brief, Keeling ignored the narrowed standing requirements following the passage of Proposition 64, arguing that she had a right to relief under the UCL "without individualized proof of deception, reliance, and injury." Tellingly, she cited cases pre-dating the amendment to the statute to support this contention. (See, e.g., *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266-1267; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105.) In her reply, she concedes that under the amended statute, a plaintiff alleging a UCL claim "must satisfy its burden of demonstrating standing by alleging facts showing that she suffered an economic injury in fact as a result of the alleged violation," citing *Kwikset, supra*, 51 Cal.4th at pp. 322, 326. She argues, however, that she "suffered economic loss in unpaid compensation in the amount of at least $58,000, which she rightfully earned as commissions and/or bonuses."

We are not persuaded. In order to suffer an injury in fact, a plaintiff may: "(1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Kwikset, supra*, 51 Cal.4th at p. 323, citing *Hall v. Time Inc., supra*, 158 Cal.App.4th at pp. 853–854 [injury in fact may not be "conjectural" or "hypothetical"; injury occurs when the plaintiff expends money, loses money or property, or is denied money to

10

which it has cognizable claim]; see also *Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 252.) Here, the facts Keeling alleged in the SAC do not support her claim that she was entitled to compensation that was not paid. As alleged in the SAC, her claim to unpaid compensation is based entirely on the PSCs. However, the PSCs do not establish a right to such compensation, because Keeling alleged that the documents were a "sham," fabricated as part of some greater scheme by Howroyd to hide compensation given to supervisors and managers. She further alleged that the PSCs were invalid because they were missing the requisite signatures. Therefore, Keeling has not alleged any facts supporting a claim that these invalid PSCs establish that she had a legitimate right to compensation.

Moreover, because Keeling claims that she was not aware of the existence of these PSCs until her 2017 deposition, she cannot allege that she relied on them or was misled. Consequently, she cannot establish that the PSCs caused injury to her. Keeling has therefore failed to allege standing to bring a claim under the UCL.[3]

## III. Leave to Amend

Keeling also contends that the trial court erred in denying leave to amend her UCL claim because "any perceived defects in

---

[3]In light of Keeling's failure to allege facts to support standing, we need not reach her argument that she could allege a UCL claim based on *any* unfair conduct, and thus that the trial court erred by finding she was merely "borrowing" the law from her other dismissed claims. (See, e.g., *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 ["a practice may be deemed unfair even if not specifically proscribed by some other law"].)

11

the second amended complaint can be cured by amendment." However, Keeling fails to identify any facts she would allege that could give rise to a viable UCL claim. In her reply brief, Keeling suggests she could "offer additional facts into Howroyd's fraudulent business practices." But as with the current allegations of the SAC, such purported facts would not establish that Keeling had a right to any unpaid compensation by Howroyd or acted in reliance on any such fraudulent practices; thus, these facts would not aid Keeling in showing that she was injured as a result of Howroyd's alleged practices.

Keeling has not met her burden to show that the trial court abused its discretion in denying leave to amend the complaint, as she has failed to demonstrate a reasonable possibility that she could cure the deficiencies in her UCL claim by amendment. (See *Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)

**DISPOSITION**

The judgment is affirmed. Respondent is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.


CURREY, J.

12