DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which granted appellees, Ilomay E. Geraldo, executrix of the estate of Samuel Geraldo, deceased, and Linda Olah and Dennis O. Geraldo, co-trustees, The Geraldo Trust, summary judgment against appellants, Morgan Bank ("Morgan Bank") and Huntington National Bank ("Huntington Bank"), and which denied appellants' motions to dismiss and for summary judgment. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Bobby G. Childers, Jr. ("Childers") allegedly stole money from Samuel Geraldo's stock accounts. This cause of action resulted. Since the initiation of this suit, Samuel Geraldo died and was substituted as plaintiff by appellees (collectively referred to as "the estate"). The estate filed amended complaints against First Dominion Mutual Life Insurance Company, Integrity Life Insurance Company, PaineWebber, Inc., Morgan Bank, Bank One, and Childers. Morgan Bank made Huntington Bank and National City Bank third-party defendants. Only the claims against Morgan Bank and Huntington Bank remain for our consideration on appeal.
 {¶ 3} At Childers' request, PaineWebber issued 27 checks, drawn on Geraldo's accounts with PaineWebber, made payable to "Samuel Geraldo, c/o Bob Childers." Childers then forged Geraldo's indorsement and deposited the checks into Childers' own bank accounts, which included Huntington Bank. Morgan Bank was the drawee/payor bank on the checks issued by PaineWebber. The estate alleged that by paying these checks, bearing unauthorized, forged and/or missing indorsements, Morgan Bank wrongfully converted the funds from Geraldo's accounts.
 {¶ 4} Morgan Bank filed a third-party complaint with respect to the 25 checks that were deposited at Huntington Bank. Morgan Bank alleged that as the depositary and collecting bank, Huntington Bank made presentment and/or transfer warranties to Morgan Bank. As such, in the event that the checks did contain unauthorized, forged and/or missing indorsements, Huntington Bank breached its warranties to Morgan Bank, thereby entitling Morgan Bank to collect against Huntington Bank for its losses.
 {¶ 5} Appellants filed motions to dismiss and for summary judgment. The estate also filed a motion for summary judgment. The trial court granted the estate's motion for summary judgment against appellants and denied appellants' motions to dismiss and for summary judgment. On appeal, appellants raise the following assignments of error:
 {¶ 6} "Assignment of Error Number One:
 {¶ 7} "The trial court erred in denying Morgan's motion to dismiss based on the three-year statute of limitations for check conversion claims (R.C. § 1303.16(G)) when it erroneously applied a discovery rule to determine the claim accrual date notwithstanding the absence of a discovery rule in the applicable statute and despite the overwhelming authority of Ohio and other states to the contrary.
 {¶ 8} "Assignment of Error Number Two:
 {¶ 9} "The trial court erred in applying the substantive provisions of the former Uniform Commercial Code to appellees' conversion claims when it had previously erroneously determined that the claims accrued in 1995, after the revised Uniform Commercial Code had been adopted in Ohio.
 {¶ 10} "Assignment of Error Number Three:
 {¶ 11} "The trial court erred in denying Huntington's and Morgan's motions for summary judgment, and granting appellees' motion for summary judgment, upon its determination that appellees had actionable conversion claims because Geraldo constructively received delivery of the checks when they were received by Childers.
 {¶ 12} "Assignment of Error Number Four:
 {¶ 13} "The trial court erred in denying Huntington's and Morgan's motions for summary judgment, and granting appellees' motion for summary judgment, because appellees' conversion claims are barred by the impostor rule.
 {¶ 14} "Assignment of Error Number Five:
 {¶ 15} "The trial court erred in denying Huntington's and Morgan's motions for summary judgment, and granting appellees' motion for summary judgment, because the checks were properly payable to Childers as Geraldo's representative under R.C. § 1308(C)(3).
 {¶ 16} "Assignment of Error Number Six:
 {¶ 17} "The trial court erred in denying Huntington's and Morgan's motions for summary judgment, and granting appellees' motion for summary judgment, upon its determination that the check indorsements did not contain Geraldo's `authorized signature' under R.C. § 1303.42(A).
 {¶ 18} "Assignment of Error Number Seven:
 {¶ 19} "The trial court erred in denying Huntington's and Morgan's motions for summary judgment, and granting appellees' motion for summary judgment, upon its determination that the checks did not contain Geraldo's valid representative indorsements under former R.C. §1303.16.
 {¶ 20} "Assignment of Error Number Eight:
 {¶ 21} "Even if this court affirms the trial court's application of the discovery rule, the trial court abused its discretion in awarding prejudgment interest from the date the checks were paid, instead of the date on which appellees' claim accrued, which the trial court had earlier identified as October 1995."
 {¶ 22} This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 23} In their first assignment of error, appellants assert that the trial court erred in denying Morgan's motion to dismiss. Specifically, appellants argue that the bulk of the estate's conversion action is time-barred by the three-year statute of limitations set forth in R.C. 1303.16(G)(1), which should have commenced at the time the checks were negotiated. We disagree.
 {¶ 24} R.C. 2305.09 provides for a four-year statute of limitations on claims concerning the recovery of personal property or for the taking or detaining of it. Prior to August 19, 1994, R.C. 2305.09
was the only statute setting forth a statute of limitations for conversion claims. On August 19, 1994, however, the Uniform Commercial Code ("U.C.C.") was amended to provide for a three-year statute of limitations for conversion claims. R.C. 1303.16(G)(1).
 {¶ 25} In this case, the checks in issue on appeal were deposited with Huntington Bank and negotiated prior to August 19, 1994, the effective date of R.C. 1303.16(G)(1). The alleged conversion of these checks, however, was not discovered until October 1995, after R.C.1303.16's effective date. The trial court held that the estate's claims were not time-barred because, although the three-year limitations period applied, it did not commence until the conversion was discovered. We agree that the estate's conversion action is not time-barred; however, we find that the date of discovery is irrelevant to the determination of which statute of limitations applies. Rather, the timing of the wrongful act, i.e. the conversion, dictates what limitations period applies.
 {¶ 26} Generally, a cause of action accrues at the time the wrongful act is committed. Harris v. Liston (1999), 86 Ohio St.3d 203,205. An act of conversion occurs when there is a "wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96, citing Zacchini v. Scripps-Howard Broadcasting Co. (1976),47 Ohio St.2d 224, 226. Accordingly, we find that the checks were converted, and the estate's cause of action arose, at the time each check was negotiated, for it was at that moment that the funds were withheld from Geraldo.
 {¶ 27} Additionally, we note that "* * * the General Assembly may not constitutionally impose a new standard upon past conduct." VanFossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 104. As such, unless the legislature constitutionally provided for retrospective application of R.C. 1303.16(G)(1), its application in this case would be unlawful as it would cause a new standard to be imposed upon past conduct. See Id.
 {¶ 28} To determine whether a statute may constitutionally be applied retrospectively, it must first be determined whether the General Assembly has specified that the statute so applies. Van Fossen, 36 Ohio St.3d at paragraph one of the syllabus. Only if the legislature has specified retrospective application does the court then inquire under Section 28, Article II of the Ohio Constitution. Id. The legislature did not give R.C. 1303.16(G)(1) retrospective application. Accordingly, R.C. 1303.16 is "presumed to be prospective in its operation." R.C. 1.48. and Van Fossen.
 {¶ 29} Based on the foregoing, we find that the four-year statute of limitations set forth in R.C. 2305.09 applies to the estate's conversion claim. With that issue decided, we must now consider whether the statute of limitations period began to run at the time the checks were negotiated, or at the time the conversion was discovered. In considering this issue, it is important to note that the fact that the estate's claim for conversion arose at the time the checks were negotiated does not preclude the use of a different accrual date for purposes of determining when the statute of limitations began to run. See, e.g., Deskins v. Young (1986), 26 Ohio St.3d 8.
 {¶ 30} Although a cause of action generally accrues at the time the wrongful act is committed, there are certain instances where the legislature and/or the Ohio Supreme Court have stated that a "discovery rule" should apply for purposes of determining when the applicable limitations period begins to run. R.C. 2305.09(D) states, "If the action is for * * * the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered * * *." Specifically, with respect to conversion, the Ohio Supreme Court stated, "* * * by the express terms of R.C. 2305.09(D), the four-year limitations period does not commence to run on claims presented in fraud or conversion until the complainants have discovered, or should have discovered, the claimed matters." Investors REIT One v. Jacobs (1989), 46 Ohio St.3d 176, paragraph 2b of the syllabus.
 {¶ 31} Despite this syllabus law in REIT One, Palmer Mfg. andSupply, Inc. v. BancOhio Nat'l Bank (1994), 93 Ohio App.3d 17, held that the discovery rule, set forth in R.C. 2305.09(D), for purposes of determining the commencement of the running of a statute of limitations, does not apply in conversion cases of negotiable instruments. The court in Palmer relied entirely on authority outside the state of Ohio and did not mention REIT One in its analysis. Insofar as syllabus law of the Ohio Supreme Court is controlling over the law of an appellate court, we decline to follow the reasoning in Palmer.
 {¶ 32} Accordingly, pursuant to R.C. 2305.09(D) and REIT One, supra, we find that the statute of limitations period did not begin to run until the alleged conversion was discovered, i.e., October 1995. Insofar as the estate sued Morgan Bank in November 1996, we find that the estate's cause of action against Morgan Bank was timely asserted. Appellants' first assignment of error is therefore found not well-taken.
 {¶ 33} In their second assignment of error, appellants argue that "[t]he trial court erred in applying the substantive provisions of the former Uniform Commercial Code to appellees' conversion claims when it had previously erroneously determined that the claims accrued in 1995, after the revised Uniform Commercial Code had been adopted in Ohio." We disagree.
 {¶ 34} According to R.C. 1.58, an amendment of a statute does not affect (a) "the prior operation of the statute or any prior action taken thereunder"; (b) "any * * * right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred" under the prior operation of the statute; or (c) "any * * * proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment * * *." R.C. 1.58(A)(1), (2) and (4). In the event that the amended statute has changed an existing statute in any of these respects, "the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended." R.C. 1.58(A)(4).
 {¶ 35} As discussed above, the alleged conversion occurred at the time the checks were negotiated. At that time, the estate's conversion action, and any liability on appellants' behalf, arose under the pre-1994 version of the U.C.C. in effect in Ohio. According to R.C. 1.58, any amendment or change to the estate's rights or privileges or to appellants' obligations or liability has no affect. See, also, TitleIns. Co. of Minnesota v. Comerica Bank-California (1994),32 Cal.Rptr.2d 735, 737-738, 24 U.C.C. Rep. Serv.2d 584, 587 (because alleged improper payment of checks by bank occurred before effective date of U.C.C. amendments, pre-amendment rules apply). We therefore find that the trial court was correct in applying the substantive provisions of the former U.C.C. to the estate's conversion action. Appellants' second assignment of error is found not well-taken.
 {¶ 36} Appellants argue in their third assignment of error that the trial court erred in denying appellants' motions for summary judgment, and in granting the estate's motion for summary judgment, because, insofar as Geraldo never received delivery of the checks, as required by R.C. 1303.16, the estate has no actionable conversion claim. We disagree.
 {¶ 37} R.C. 1303.60(A) states, "An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee." R.C.1303.60, however, became effective August 19, 1994. Accordingly, it does not apply to the estate's cause of action. Additionally, we note that the pre-amendment version of the U.C.C. had no similar delivery requirement. Rather, former R.C. 1303.55(A)(3), simply stated that "[a]n instrument is converted when * * * it is paid on a forged indorsement." Furthermore, we find that Geraldo can sue Morgan Bank for conversion because he was the designated payee on the checks and because the checks were constructively delivered to Geraldo when PaineWebber gave them to Childers. See United Home Life Ins. Co. v. Bellbrook Community Bank
(1988), 50 Ohio App.3d 53, 55.
 {¶ 38} Appellants also argue in their third assignment of error that there was no conversion because Childers, as an alternative co-payee, was entitled to enforce the checks. This argument is related to appellants' fifth, and seventh assignments of error. Appellants argue in their fifth assignment of error that there was no conversion because the checks were properly payable to Childers as Geraldo's representative. In their seventh assignment of error, appellants argue that there was no conversion because Childers was held out as Geraldo's agent on the face of the checks. Insofar as these three assignments of error are related, we will consider these assignments of error together.
 {¶ 39} Appellants rely on R.C. 1303.08(D) regarding their assertion that Childers was a co-payee, and thus entitled to sign each check. R.C. 1303.08, however, was not in effect at the time the checks were negotiated and therefore does not apply. Rather, we find that former R.C. 1303.16, in effect at the time the checks were negotiated, applies in this situation.
 {¶ 40} Pursuant to former R.C. 1303.16(A), when an instrument is made payable to a named person and has additional words describing him as an "agent or officer of a specified person," then the instrument is payable to the agent's principal, but the "agent or officer may act as if he were the holder." Pursuant to former R.C. 1303.16(B), when an instrument is made payable to a named person with the addition of words describing him "as any other fiduciary for a specified person or purpose," the instrument "is payable to the payee and may be negotiated, discharged or enforced by him." And, pursuant to former R.C. 1303.16(C), an instrument made payable to a named person with the addition of words describing him in "any other manner is payable to the payee unconditionally and the additional words are without effect on subsequent parties."
 {¶ 41} In this case, all the checks in issue were made payable to "Samuel Geraldo, c/o Bob Childers" and included Childers' business address. We agree with the trial court that the symbol "c/o" on the checks in question was not ambiguous and did not operate to designate Childers as an alternative co-payee of the checks. The symbol "c/o" means "in care of" and means that another only has "custody" or "temporary charge" over an item belonging to another. See Buckeye Foodsv. Cuyahoga Cty. Bd. of Revision (1997), 78 Ohio St.3d 459, 462, citing Webster's Third New International Dictionary (1986) 338. The symbol is "used especially in the phrase care of or in care of on mail sent to a person through another person or other agency * * *." Id.
 {¶ 42} We further find that the additional "c/o" language following Geraldo's name in no way established, on the face of the checks, that Childers was Geraldo's agent, fiduciary, or representative. There is simply no authority to support such a finding. Appellants rely on a number of cases in support of their arguments; however, none of the cases establish that "c/o" language on a check creates an apparent agency, fiduciary, or representative relationship. At best, the "c/o" language on the checks only acted to designate Childers as the person who could temporarily take charge of the checks for Geraldo, the sole named payee. In fact, to the contrary, Geraldo never indicated to PaineWebber that Childers had agency or fiduciary authority; rather, Childers was merely a financial advisor or consultant.
 {¶ 43} Accordingly, we find that Geraldo was the sole payee, Childers had no authority to negotiate the checks, and Childers certainly had no authority to endorse Geraldo's name. Based on the foregoing, we find appellants' third, fifth and seventh assignments of error not well-taken.
 {¶ 44} We will next consider appellants' sixth assignment of error insofar as it concerns Childers' alleged agency relationship with Geraldo. Appellants argue that Childers' indorsement of Geraldo's name was valid and enforceable because the agency relationship between Childers and Geraldo was apparent from the face of each check. We disagree. As discussed above, the "c/o" language did not confer any agency authority onto Childers. Additionally, we find that Childers had no actual authority to indorse Geraldo's name. Accordingly, we find appellants' sixth assignment of error not well-taken.
 {¶ 45} Appellants argue in their fourth assignment of error that the trial court erred in denying appellants' motions for summary judgment, and granting the estate's motion, because the estate's conversion claims are barred by the impostor rule. Specifically, appellants argue that R.C. 1303.44 shields them from liability because Childers held himself out as Geraldo's representative. Additionally, appellants argue that under either version of the imposter rule, R.C.1303.44(A) or former R.C. 1303.41(A)(1), they are shielded from liability from all checks issued after August 23, 1993, insofar as Childers impersonated Geraldo when Childers opened the Resource Management Account in Geraldo's name.
 {¶ 46} Generally, if a check contains a forged endorsement, it is not "properly payable," and if paid, the drawee bank is generally liable to its customer. Ed Stinn Chevrolet, Inc. v. National City Bank (1986),28 Ohio St.3d 221, 227. The imposter rule, however, is an exception to this general rule and shields the bank from liability. As we have held a number of times above, only the pre-amendment (pre-1994) version of the U.C.C. applies to the estate's claims in this case. Accordingly, the applicable version of the imposter rule, former R.C. 1303.41(A)(1) (former U.C.C. 3-405), stated as follows:
 {¶ 47} "(A) An indorsement by any person in the name of a named payee is effective if:
 {¶ 48} "(1) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; * * *."
 {¶ 49} The impostor rule under former R.C. 1303.41(A)(1) only applied to actual impersonation of the payee and did not apply if the impostor merely misrepresented his authority to act for the payee. See Official Comment 2 to U.C.C. 3-405. Accordingly, appellants are not shielded from liability for any alleged misrepresentation by Childers concerning his authority to receive checks on Geraldo's behalf. Rather, pursuant to R.C. 1303.41(A)(1), appellants would only be shielded from liability by the imposter rule if appellants established that, by impersonating Geraldo, Childers induced PaineWebber to draft checks in Geraldo's name.
 {¶ 50} Appellants assert that Childers did impersonate Geraldo when he forged Geraldo's name and opened the Resource Management Account. Assuming this is the type of impersonation contemplated by R.C. 1303.41, there is no evidence that this supposed impersonation "induced" PaineWebber to issue checks 68278, 69387, 71700, and 71336. To the contrary, all the checks in issue on appeal state that they were drawn on Account Number DW 265311, which was the account opened by Geraldo in May 1990. Accordingly, insofar as there is no evidence that Childers' alleged impersonation induced PaineWebber to issue the instruments, we find that the impostor rule does not shield appellants from liability.
 {¶ 51} Appellants' fourth assignment of error is therefore found not well-taken.
 {¶ 52} Appellants argue in their eighth assignment of error that the trial court abused its discretion in awarding the estate prejudgment interest from the date the checks were negotiated rather than from the date the conversion was discovered. We disagree. Pursuant to R.C.1343.03(A), the estate was entitled to interest on its claim from the date the instruments became "due and payable." Accordingly, we find that the trial court did not abuse its discretion in awarding prejudgment interest from the date each check was negotiated. See former R.C.1303.55(A)(3). Appellants' eighth assignment of error is therefore found not well-taken.
 {¶ 53} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.